632 A.2d 1316

**COMMONWEALTH of Pennsylvania**

**v.**

**James GOVENS, Appellant.**

Superior Court of Pennsylvania.

Argued April 19, 1993.

Filed Oct. 28, 1993.

466

Janis Smarro, Philadelphia, for appellant.

Peter J. Gardner, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, WIEAND, McEWEN, CIRILLO, DEL SOLE, BECK, TAMILIA, JOHNSON and HUDOCK, JJ.

WIEAND, Judge.

Where an illegal sale of cocaine through a hole or opening in an apartment door is made in the presence of a police officer, may the police enter the apartment without a warrant for the purpose of identifying and arresting the seller? This is the principal issue which we are called upon to decide in this appeal by James Govens following his conviction for unlawful delivery of a controlled substance and tampering with physical evidence.[1]

## I. *Factual History*

At the pre-trial suppression hearing in this case, Philadelphia Police Officers William Brunswick and Virginia Pagano testified that, on the evening of September 21, 1988, Officer Brunswick, acting in an undercover capacity, had entered an apartment building at 2334 North 20th Street,[2] where he had proceeded to the first floor rear apartment and knocked on the door. In response to his knock, a male voice replied from behind a closed door by asking Brunswick what he wanted. Brunswick answered that he wanted a "dime," which signified

1. Govens was sentenced to pay a fine of fifteen thousand ($15,000.00) dollars and undergo imprisonment for not less than three (3) years nor more than six (6) years for delivery of a controlled substance. No additional sentence was imposed on his conviction for tampering with evidence.

2. The building was described as a single family row home which had been haphazardly converted into a multi-unit dwelling.

a ten dollar bag of cocaine. He was told to slip the money through a hole in the door. This he did. He placed two five dollar bills, whose serial numbers had been pre-recorded, through the hole in the door; and, seconds later, a small plastic packet, containing a white powder, was passed out through the hole. Brunswick said that the hand of the male passing the packet through the door had been black and that it had contained, on one of the fingers, a large, distinctive, gold ring in the shape of a ram's head. After the transaction had been completed, Brunswick exited the building and reported what had transpired to a backup team, which consisted of a sergeant and several other officers. The powder in the packet was field tested and found to contain cocaine. Brunswick then returned to the Narcotics Unit headquarters to wait for the backup team to return.

Within fifteen or twenty minutes after Officer Brunswick had made the purchase of cocaine, the backup team proceeded to the same apartment. There, they knocked on the door and identified themselves as police. Officer Pagano testified that she had banged on the door, while at the same time yelling, "Police." No one responded to the knocking, but Officer Pagano heard noises from within the apartment. These she described as "shuffling and moving about as if someone [were] trying either to get out the back way or open a window." [3] Pagano then pushed on the door, which was unlocked, and it opened. When she entered the apartment, she looked to her left and observed appellant standing in a bathroom, where he was dumping numerous plastic packets into the toilet. The packets were subsequently determined to contain cocaine. Appellant was placed under arrest, and police recovered one hundred and seventy-six (176) packets of cocaine from the toilet and bathroom area. They also seized a large gold ram's head ring, which appellant was wearing, and six hundred dollars in cash, including the two pre-recorded five dollar bills

3. It was later discovered that, in fact, the windows of the apartment were covered with plywood and that it would have been difficult to exit therefrom by any means other than the front door.

which Officer Brunswick had used to purchase cocaine.[4] Neither a search warrant nor an arrest warrant had been obtained prior to entry of the apartment.

Appellant did not testify at the suppression hearing, and no evidence was presented on his behalf.

The suppression court held that inasmuch as appellant's sale of contraband had exceeded the threshold of the apartment and, therefore, could be observed by persons outside the apartment, he no longer had any reasonable expectation of privacy in the apartment. We shall examine this and other arguments carefully.

## II. *Appellant's Standing*

First, however, we must consider the Commonwealth's argument that appellant lacks standing to challenge police conduct in this case. This is an argument which is being made for the first time before this Court. It was not an argument made by the Commonwealth during the suppression hearing. As a result, there was no testimony regarding the identity of the person who had leased the apartment. Similarly, there was no evidence regarding the status of appellant or the reason for his presence in the apartment. Whether he was tenant, guest, invitee or trespasser simply was not developed by evidence at the suppression hearing. Consequently, appellant's standing to challenge the seizure of contraband was assumed, and with respect thereto the suppression court made no findings.

It was not until the colloquy occurred in which appellant waived his right to be tried by jury that he gave an address different than that of the apartment in which he had been arrested. It is on the basis solely of this response that the Commonwealth now argues that appellant was not an occupant of the apartment where contraband was seized and, therefore, lacks standing.

4. An unidentified female was found in the apartment with appellant. However, there was no evidence at the suppression hearing concerning her relationship to either appellant or the apartment.

In *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court "abandoned a separate inquiry into a defendant's 'standing' to contest an allegedly illegal search in favor of an inquiry that focuse[s] directly on the substance of the defendant's claim that he or she possessed a 'legitimate expectation of privacy' in the area searched." *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641 (1980). See: *United States v. Maddox,* 944 F.2d 1223, 1234 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 610, 116 L.Ed.2d 633 (1991) (issue of standing collapses into merits in Fourth Amendment cases); *United States v. Echegoyen,* 799 F.2d 1271, 1277 (9th Cir.1986) (since *Rakas,* issues of standing are analyzed under substantive Fourth Amendment doctrine). Thus, "an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.'" *United States v. Salvucci,* 448 U.S. 83, 91–92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619, 628 (1980), quoting *Rakas v. Illinois, supra,* 439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401. See also: *United States v. Wiley,* 847 F.2d 480, 481 (8th Cir.1988); *United States v. Antone,* 753 F.2d 1301, 1306 (5th Cir.1985), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *United States v. Perez,* 700 F.2d 1232, 1236 (8th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 884 (1984).

The fact that appellant may have resided elsewhere would not alone be determinative of his standing to challenge the seizure of contraband in this case. It is well settled that "a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." *Rakas v. Illinois, supra,* 439 U.S. at 142, 99 S.Ct. at 430, 58 L.Ed.2d at 400. See also: *United States v. Robinson,* 698 F.2d 448, 454 (D.C.Cir.1983). E.g. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (holding that overnight house guest had legitimate expectation of privacy in host's home so as to be able to claim protection of Fourth Amendment against illegal entry by police).

█ The cases which have been decided post-*Rakas* have generally held that a casual visitor who is merely present in another's person's home does not have a legitimate expectation of privacy to contest an illegal entry by police into that home. See, e.g.: *Commonwealth v. Tann,* 500 Pa. 593, 598–599, 459 A.2d 322, 325 (1983); *Commonwealth v. Ferretti,* 395 Pa.Super. 629, 577 A.2d 1375 (1990). See also: *United States v. Adamo,* 742 F.2d 927, 947–948 (6th Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); *United States v. Perez, supra.* However, "a defendant who is more than a casual visitor to an apartment or dwelling in which illegal drugs have been seized has the right under the Fourth Amendment to the United States Constitution . . . to challenge the search and seizure of the illegal drugs which he is accused of possessing." *State v. Adkins,* 176 W.Va. 613, 616, 346 S.E.2d 762, 766 (1986). See also: *United States v. Sangineto–Miranda,* 859 F.2d 1501, 1510 (6th Cir.1988); *United States v. Echegoyen, supra; United States v. Pollock,* 726 F.2d 1456, 1465 (9th Cir.1984); *State v. Corpier,* 793 S.W.2d 430, 436–437 (Mo.App.1990). Thus, "an occupant other than the owner or lessee of an apartment [must] demonstrate a significant and current interest in the searched premises in order to establish an expectation of privacy." *United States v. Garcia,* 741 F.2d 363, 366 (11th Cir.1984). Factors to be considered in determining whether a defendant has a legitimate expectation of privacy in another person's home include: (1) possession of a key to the premises; (2) having unlimited access to the premises; (3) storing of clothing or other possessions on the premises; (4) involvement in illegal activities conducted on the premises; (5) ability to exclude other persons from the premises; and (6) expression of a subjective expectation of privacy in the premises. See: *United States v. Nabors,* 761 F.2d 465, 469–470 (8th Cir.1985), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 123 (1985); *United States v. Haydel,* 649 F.2d 1152, 1154–1155 (5th Cir.1981), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982).

█ In the instant case, we do not know appellant's precise status vis-a-vis the apartment in which he was arrested. We

only know that he was present when the police entered the apartment without a warrant, that he had been engaged in selling cocaine from the apartment and that he apparently had dominion and control over the apartment as well as the cocaine and other evidence that was seized by police. Under these circumstances, there is nothing to suggest that his presence in the apartment was so tenuous as to deprive him of standing to challenge the warrantless entry therein of police.[5]

Therefore, we reject the Commonwealth's belated attempt to raise the issue of standing. The issue was not raised at the time of the suppression hearing, and the evidence at the suppression hearing was wholly inadequate to enable this Court to make such a determination. See: *Steagald v. United States,* 451 U.S. 204, 208–211, 101 S.Ct. 1642, 1646–1647, 68 L.Ed.2d 38, 43–45 (1981) (holding that Government could not raise for first time on certiorari to Supreme Court issue of whether defendant possessed a legitimate expectation of privacy in a house which had been searched by police). See also: *United States v. Sanchez,* 689 F.2d 508, 509 n. 1 (5th Cir.1982) ("As the government never raised any issue of standing below, we decline to consider its contentions in this regard and accordingly assume, as all parties did in the trial court, that defendant has sufficient standing.").

### III. *The Standard of Review*

■ Where a motion to suppress physical evidence has been filed, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 323(h). The Commonwealth is required to establish the admissibility of the challenged evidence by a preponderance of the evidence. *Commonwealth v. DeWitt,* 530 Pa. 299, 301, 608 A.2d 1030, 1031 (1992); *Commonwealth v. Frombach,* 420 Pa.Super. 498, 500, 617 A.2d 15,

---

5. The decision of the Superior Court in *Commonwealth v. Cameron,* 385 Pa.Super. 492, 561 A.2d 783 (1989), is not controlling of the "standing" issue in the instant case. In *Cameron,* the defendant had no legitimate expectation of privacy in an abandoned, uninhabitable house, characterized as a structure and not a home. Here, there is nothing to suggest that the apartment was other than a residential dwelling.

16 (1992). In conducting appellate review of the ruling of the suppression court, this Court:

> 'must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.'

*Commonwealth v. Whitney,* 511 Pa. 232, 239–240, 512 A.2d 1152, 1156 (1986), quoting *Commonwealth v. Cortez,* 507 Pa. 529, 532, 491 A.2d 111, 112 (1985), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). See also: *Commonwealth v. O'Shea,* 523 Pa. 384, 395, 567 A.2d 1023, 1028 (1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990); *Commonwealth v. Hughes,* 521 Pa. 423, 438–439, 555 A.2d 1264, 1271–1272 (1989). This Court will "affirm the decision of the suppression court 'if it can be sustained for any reason whatsoever, even if the [suppression] court offered an erroneous reason to support its action.'" *Commonwealth v. Bowers,* 400 Pa.Super. 377, 381, 583 A.2d 1165, 1167 (1990), quoting *Commonwealth v. Reidenbaugh,* 282 Pa.Super. 300, 309–310, 422 A.2d 1126, 1131 (1980). See also: *Commonwealth v. O'Shea, supra; Commonwealth v. Pestinikas,* 421 Pa.Super. 371, 389, 617 A.2d 1339, 1349 (1992).

## IV. *The Fourth Amendment*

Appellant contends, as he did at the suppression hearing, that absent exigent circumstances the police could not enter his apartment without a warrant. "The Fourth Amendment to the Constitution of the United States 'protects people from unreasonable governmental intrusions into their legitimate expectations of privacy.'" *Commonwealth v. Shaw,* 476 Pa. 543, 550, 383 A.2d 496, 499 (1978), quoting *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538, 546 (1977), *overruled on other grounds in California v. Aceve-*

*do,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). "The protection of the Fourth Amendment does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Commonwealth v. Brundidge,* 533 Pa. 167, 173, 620 A.2d 1115, 1118 (1993). See: *Rakas v. Illinois, supra,* 439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401. "An expectation of privacy is present when the individual, by his conduct, 'exhibits an actual (subjective) expectation of privacy' and that [——] subjective expectation 'is one that society is prepared to recognize as reasonable.'" *Commonwealth v. Oglialoro,* 525 Pa. 250, 256, 579 A.2d 1288, 1290 (1990), quoting *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., Concurring). See: *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226–227 (1979) (Majority of Supreme Court adopts Justice Harlan's concurring opinion in *Katz*). The determination of whether an individual's subjective expectation of privacy will be recognized as legitimate "depends upon the totality of the circumstances and ultimately rests upon a balancing of the societal interests involved." *Commonwealth v. Peterson,* 408 Pa.Super. 22, 27, 596 A.2d 172, 174 (1991) (plurality opinion), *allocatur granted,* 530 Pa. 641, 607 A.2d 252 (1992). See: *Hudson v. Palmer,* 468 U.S. 517, 527, 104 S.Ct. 3194, 3200–3201, 82 L.Ed.2d 393, 403–404 (1984); *Rawlings v. Kentucky, supra,* 448 U.S. at 104–106, 100 S.Ct. at 2561–2562, 65 L.Ed.2d at 641–642. See also: *Commonwealth v. Brundidge, supra* at 173, 620 A.2d at 1118.

Generally, residential settings are the areas which are given the greatest protection by the Fourth Amendment. In this regard, the United States Supreme Court has observed:

The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ...

shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States,* 365 US 505, 511, 5 L Ed 2d 734, 81 S Ct 679 [683], 97 ALR2d 1277. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton v. New York,* 445 U.S. 573, 589–590, 100 S.Ct. 1371, 1381–1382, 63 L.Ed.2d 639, 653 (1980). See also: *United States v. Valasquez,* 626 F.2d 314, 316–317 (3d Cir.1980); *Commonwealth v. Conn,* 377 Pa.Super. 442, 446, 547 A.2d 768, 770 (1988). "The purpose of the [*Payton* ] decision was not to protect the person of the suspect but to protect his home from entry in the absence of a magistrate's finding of probable cause." *Minnesota v. Olson, supra,* 495 U.S. at 95, 110 S.Ct. at 1687, 109 L.Ed.2d at 92. See: *New York v. Harris,* 495 U.S. 14, 18, 110 S.Ct. 1640, 1643, 109 L.Ed.2d 13, 20 (1990) (physical entry of the home is chief evil against which Fourth Amendment is directed). Thus, it has further been observed:

> The Fourth Amendment safeguard against unreasonable searches and seizures is aimed at deterring, inter alia, physical entry into the home. *U.S. v. U.S. District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Securing a warrant under the discernment of a detached and impartial issuing authority prevents the dangers of unfettered intrusions into such sacrosanct environments. *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

*Commonwealth v. Henkel,* 306 Pa.Super. 346, 352, 452 A.2d 759, 761 (1982). See also: *Commonwealth v. McBride,* 391 Pa.Super. 113, 118–119, 570 A.2d 539, 541–542 (1990); *Commonwealth v. Rispo,* 338 Pa.Super. 225, 230, 487 A.2d 937, 939 (1985). Therefore, "[a]s a general rule a search or seizure without a warrant is deemed unreasonable for constitutional

purposes." *Commonwealth v. Holzer,* 480 Pa. 93, 102, 389 A.2d 101, 106 (1978), citing *Coolidge v. New Hampshire,* 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971). See also: *Commonwealth v. Chandler,* 505 Pa. 113, 122–123, 477 A.2d 851, 855 (1984); *Commonwealth v. Ehrsam,* 355 Pa.Super. 40, 51, 512 A.2d 1199, 1204 (1986), *cert. denied,* 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 311 (1989).

## V. *Authority to Make a Warrantless Arrest in a Public Place*

It is well settled that police may make a warrantless arrest in a public place solely upon the basis of probable cause. See: *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). See also: *United States v. Davis,* 785 F.2d 610, 615 (8th Cir.1986); *United States v. Driver,* 776 F.2d 807, 809 (9th Cir.1985). In *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the Supreme Court considered a case in which the police had attempted to arrest a suspect who had been standing in the open doorway to her home. When the police identified themselves, the suspect attempted to retreat into her home. The police followed and completed the arrest inside the suspect's home. The Supreme Court concluded that the suspect was in a public place for purposes of the Fourth Amendment when she was standing in an open doorway, reasoning as follows:

> While it may be true that under the common law of property the threshold of one's dwelling is "private," as is the yard surrounding the house, it is nonetheless clear that under the cases interpreting the Fourth Amendment Santana was in a "public" place. She was not in an area where she had any expectation of privacy. "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, 351, 19 L.Ed.2d 576, 88 SCt 507 [511] (1967). She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house. *Hester v. United States,* 265 US 57, 59, 68 LEd 898, 44 SCt

445 [446] (1924). Thus, when the police, who concededly had probable cause to do so, sought to arrest her, they merely intended to perform a function which we have approved in *Watson.*

*United States v. Santana, supra,* 427 U.S. at 42, 96 S.Ct. at 2409, 49 L.Ed.2d at 305. See also: *United States v. Sewell,* 942 F.2d 1209, 1211–1213 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1567, 118 L.Ed.2d 213 (1992); *United States v. Fleming,* 677 F.2d 602, 608 (7th Cir.1982). The *Santana* Court held that police had been in "hot pursuit" when they followed the suspect into her home. The Court observed that "a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under *Watson,* by the expedient of escaping into a private place." *Id.* 427 U.S. at 43, 96 S.Ct. at 2410, 49 L.Ed.2d at 306.

In its subsequent decision in *Payton v. New York, supra,* however, the Supreme Court made it clear that a firm line was to be drawn at the threshold of a private home and that, accordingly, police were not permitted to make a warrantless entry into a home for the purpose of making a routine felony arrest. Nevertheless, in reliance upon *Santana,* some courts have held that police may, after knocking and identifying themselves, arrest a person who voluntarily exposes himself to warrantless seizure by stepping into an open doorway. See: *Duncan v. Storie,* 869 F.2d 1100, 1102 (8th Cir.1989), *cert. denied,* 493 U.S. 852, 110 S.Ct. 152, 107 L.Ed.2d 110 (1989); *United States v. Carrion,* 809 F.2d 1120, 1128 (5th Cir.1987); *United States v. Whitten,* 706 F.2d 1000, 1015 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *United States v. Mason,* 661 F.2d 45, 47 (5th Cir.1981); *United States v. Botero,* 589 F.2d 430, 432 (9th Cir.1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). Other courts have held, however, that "police may not forcibly or coercively gain admittance to a private residence to effect an arrest simply by obtaining the arrestee's presence at the door." *United States v. McCraw,* 920 F.2d 224, 229 (4th Cir.1990). See also: *United States v. Morgan,* 743 F.2d 1158, 1166–1167 (6th Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct.

478

2126, 85 L.Ed.2d 490 (1985); *United States v. Johnson,* 626 F.2d 753, 756–757 (9th Cir.1980), *aff'd,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). Compare: *United States v. Berkowitz,* 927 F.2d 1376, 1385–1388 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991); *United States v. Davis, supra,* 785 F.2d at 615; *United States v. McCool,* 526 F.Supp. 1206, 1208–1209 (M.D.Tenn.1981); *State v. Morse,* 125 N.H. 403, 405–09, 480 A.2d 183, 185–187 (1984); *Mowrer v. State,* 447 N.E.2d 1129, 1132–1133 (Ind. App.1983); *Smith v. State,* 72 Md.App. 450, 531 A.2d 302 (1987); *State v. Holeman,* 103 Wash.2d 426, 428, 693 P.2d 89, 91 (1985); *State v. Santiago,* 224 Conn. 494, 619 A.2d 1132 (1993).

■ In the instant case, no attempt was made to arrest appellant in a public place. Neither was his arrest preceded by hot pursuit. After the sale of cocaine had been consummated, a period of fifteen or twenty minutes elapsed during which appellant enjoyed the privacy of his apartment. In the meantime, the undercover police officer, who had purchased the cocaine, reported to his backup team, a field test was performed and plans were made to effect an arrest. The arrest without a warrant, therefore, cannot be upheld on grounds that it had been made in an open doorway or following hot pursuit.

■ The warrantless entry of appellant's apartment to search or make an arrest also cannot be justified solely on the basis that the sale of cocaine had been observed by police who thereafter had probable cause to believe that contraband was present in the apartment.

Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. *Taylor v. United States,* 286 US 1, 76 LEd 951, 52 SCt 466; *Johnson v United States,* 333 US 10, 92 LEd 436, 68 SCt

367; *McDonald v United States,* 335 US 451, 93 LEd 153, 69 SCt 191; *Jones v United States,* 357 US 493, 497–498, 2 LEd2d 1514, 1518, 78 SCt 1253 [1256–57]; *Chapman v United States,* 365 US 610, 5 LEd2d 828, 81 SCt 776; *Trupiano v United States,* 334 US 699, 92 LEd 1663, 68 SCt 1229.

*Coolidge v. New Hampshire, supra,* 403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed.2d at 584 (footnote omitted). See also: *Hoffman v. People,* 780 P.2d 471, 475 (Colo.1989); *State v. Rickard,* 420 So.2d 303 (Fla.1982); *State v. Hook,* 60 Hawaii 197, 1227–29, 587 P.2d 1224, 1228–1229 (1978); *People v. Pakula,* 89 Ill.App.3d 789, 793–96, 44 Ill.Dec. 919, 923–24, 411 N.E.2d 1385, 1389–1390 (1990); *Sayre v. State,* 471 N.E.2d 708, 713 (Ind.App.1984), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986); *Latham v. Sullivan,* 295 N.W.2d 472, 476–477 (Iowa App.1980). This principle is equally applicable whether police make a warrantless entry for the purpose of making an arrest or seizing contraband. See: *Horton v. California,* 496 U.S. 128, 137 n. 7, 110 S.Ct. 2301, 2308 n. 7, 110 L.Ed.2d 112, 123 n. 7 (1990).

As applied to the facts of the instant case, it seems clear that the police had probable cause to arrest appellant after Officer Brunswick had purchased a packet of cocaine from him through the hole in the apartment door. Nevertheless, "[p]robable cause alone will not support a warrantless search or arrest in a residence ... unless some exception to the warrant requirement is also present." *United States v. Al-Azzawy,* 784 F.2d 890, 894 (9th Cir.1985), *cert. denied,* 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986). "It is well established that, absent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists." *United States v. Cruz Jimenez,* 894 F.2d 1, 5 (1st Cir.1990). See: *Steagald v. United States, supra,* 451 U.S. at 211–212, 101 S.Ct. at 1647, 68 L.Ed.2d at 45. See also: *United States v. Bradley,* 922 F.2d 1290, 1295 (6th Cir.1991); *United States v. Salvador,* 740 F.2d 752, 758 (9th Cir.1984), *cert. denied,* 469 U.S. 1196, 105 S.Ct. 978, 83

L.Ed.2d 980 (1985). "Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732, 743 (1984). See also: *United States v. Beltran,* 917 F.2d 641, 642 (1st Cir.1990); *United States v. Zabare,* 871 F.2d 282, 289 (2nd Cir.1989), *cert. denied,* 493 U.S. 856, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989). In this case, appellant did not consent to the warrantless entry which was made by police into the apartment from which he had sold cocaine to Officer Brunswick.[6] If the entry without a warrant can be justified, therefore, it can only be because exigent circumstances required an immediate entry before a warrant could be obtained.

## VI.  *Exigent Circumstances*

■  The exigent circumstances exception to the warrant requirement recognizes that "some situations present a compelling need for instant arrest, and that delay to seek a warrant will endanger life, limb, or overriding law enforcement interests. In these cases, our strong preference for use of a warrant must 'give way to an urgent need for immediate action.' " *United States v. Alvarez,* 810 F.2d 879, 881 (9th Cir.1987), quoting *United States v. Blake,* 632 F.2d 731, 733 (9th Cir.1980). See also: *United States v. Blasco,* 702 F.2d 1315, 1325 (11th Cir.1983), *cert. denied,* 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983); *Commonwealth v. Holzer, supra,* 480 Pa. at 102, 389 A.2d at 106.

---

**6.**  We recognize, of course, that had appellant·permitted Officer Brunswick to enter the apartment to purchase the cocaine, the officer would have been lawfully on the premises pursuant to appellant's consent and then, upon completion of the transaction, could properly have made a warrantless arrest. See: *Commonwealth v. Moye,* 402 Pa.Super. 81, 586 A.2d 406 (1990). See also: *United States v. Diaz,* 814 F.2d 454, 459 (7th Cir.1987), *cert. denied,* 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987); *United States v. Paul,* 808 F.2d 645, 648 (7th Cir.1986); *United States v. Ruiz–Altschiller,* 694 F.2d 1104, 1106–1107 (8th Cir. 1982), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3117, 77 L.Ed.2d 1371 (1983).

Terms like "exigent circumstances" or "urgent need" are useful in underscoring the heavy burden on the police to show that there was a need that could not brook the delay incident to obtaining a warrant, and that it is only in the light of those circumstances and that need that the warrantless search meets the ultimate test of avoiding condemnation under the Fourth Amendment as "unreasonable."

*Dorman v. United States,* 435 F.2d 385, 392 (D.C.Cir.1970) (en banc). " 'All decisions made pursuant to the exigent circumstances exception [to the warrant requirement] must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances.' " *Commonwealth v. Conn, supra,* 377 Pa.Super. at 447, 547 A.2d at 770, quoting *Commonwealth v. Daniels,* 280 Pa.Super. 278, 286, 421 A.2d 721, 725 (1980).

Although the circumstances which give rise to exigent circumstances may vary from case to case, the Pennsylvania Supreme Court has identified the following factors to be considered in determining whether exigent circumstances exist:

"First, that a grave offense is involved, particularly one that is a crime of violence. See, e.g., *Warden v. Hayden* [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) ]; *McDonald v. United States,* 335 U.S. 451, 459, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (concurring opinion of Justice Jackson). Contrariwise the restrictive requirement for a warrant is more likely to be retained, and the need for proceeding without a warrant found lacking, when the offense is what has been sometimes referred to as one of the 'complacent' crimes, like gambling.

"Second, and obviously inter-related, that the suspect is reasonably believed to be armed. Delay in arrest of an armed felon may well increase danger to the community meanwhile, or to the officers at time of arrest. This consideration bears materially on the justification for a warrantless entry.

"Third, that there exists not merely the minimum of probable cause, that is requisite even when a warrant has

been issued, but beyond that a clear showing of probable cause, including 'reasonably trustworthy information,' to believe that the suspect committed the crime involved.

"Fourth, strong reason to believe that the suspect is in the premises being entered.

"Fifth, a likelihood that the suspect will escape if not swiftly apprehended.

"Sixth, the circumstances that the entry, though not consented, is made peaceably. Forcible entry may in some instances be justified. But the fact that entry was not forcible aids in showing reasonableness of police attitude and conduct. The police, by identifying their mission, give the person an opportunity to surrender himself without a struggle and thus to avoid the invasion of privacy involved in entry into the home.

"Another factor to be taken into account, though it works in more than one direction, relates to time of entry— whether it is made at night. On the one hand, as we shall later develop, the late hour may underscore the delay (and perhaps impracticability of) obtaining a warrant, and hence serve to justify proceeding without one. On the other hand, the fact that an entry is made at night raises particular concern over its reasonableness, as indicated in Justice Harlan's opinion in *Jones v. United States* [357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)], and may elevate the degree of probable cause required, both as implicating the suspect, and as showing that he is in the place entered." (Footnotes omitted.)

*Commonwealth v. Williams,* 483 Pa. 293, 298–299, 396 A.2d 1177, 1179–1180 (1978), *cert. denied,* 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), quoting *Dorman v. United States, supra,* 435 F.2d at 392–393. See also: *Commonwealth v. Wagner,* 486 Pa. 548, 557, 406 A.2d 1026, 1031 (1979); *Commonwealth v. Williams,* 411 Pa.Super. 586, 593–596, 602 A.2d 350, 353–355 (1992).

It is also clear that "a reasonable belief by police that evidence is likely to be destroyed will give rise to exigent

circumstances sufficient to justify a warrantless entry into a private residence." *Commonwealth v. Ariondo*, 397 Pa.Super. 364, 374, 580 A.2d 341, 346 (1990). See: *United States v. Edwards*, 602 F.2d 458, 468–469 (1st Cir.1979); *United States v. Guidry*, 534 F.2d 1220, 1222–1223 (6th Cir.1976); *United States v. Blake*, 484 F.2d 50, 54–55 (8th Cir.1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Rubin*, 474 F.2d 262, 268–269 (3d Cir.1973), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). It has often been said, however, that "[p]olice may not justify a warrantless entry and search on the basis of exigent circumstances of their own making." *Commonwealth v. Ariondo, supra*, 397 Pa.Super. at 375, 580 A.2d at 346. See: *United States v. Socey*, 846 F.2d 1439, 1448 (D.C.Cir.1988), *cert. denied*, 488 U.S. 858, 109 S.Ct. 152, 102 L.Ed.2d 123 (1988); *United States v. Munoz–Guerra*, 788 F.2d 295, 298 (5th Cir. 1986); *United States v. Rosselli*, 506 F.2d 627, 630–631 (7th Cir.1974). Therefore, it becomes relevant to consider "whether police have fully availed themselves of one or more earlier opportunities to obtain a warrant." *Commonwealth v. Conn, supra*, 377 Pa.Super. at 449, 547 A.2d at 771. See also: *United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 299, 116 L.Ed.2d 243 (1991); *United States v. Collazo*, 732 F.2d 1200, 1204 (4th Cir.1984), *cert. denied*, 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985); *United States v. Impink*, 728 F.2d 1228, 1231–1232 (9th Cir.1984). Nevertheless, "the reasonableness of a search under exigent circumstances is not foreclosed by the failure to obtain a warrant at the earliest practicable moment." *United States v. Gardner*, 553 F.2d 946, 948 (5th Cir.1977), *cert. denied*, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753 (1978). See: *Cardwell v. Lewis*, 417 U.S. 583, 595–596, 94 S.Ct. 2464, 2472, 41 L.Ed.2d 325, 338 (1974) ("[T]he fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action."). See also: *United States v. Cattouse*, 846 F.2d 144, 147 (2d Cir.1988), *cert. denied*, 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 335 (1988); *United States v. Thompson*, 700 F.2d 944, 950 (5th Cir.1983). Moreover, "[t]hat the

exigency was foreseeable at the time the decision was made to forego or postpone obtaining a warrant does not, by itself, control the legality of a subsequent warrantless search triggered by that exigency." *United States v. Webster,* 750 F.2d 307, 327 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985). See also: *United States v. Mitchell,* 538 F.2d 1230, 1233 (5th Cir.1976) (en banc), *cert. denied,* 430 U.S. 945, 97 S.Ct. 1578, 51 L.Ed.2d 792 (1977).

With respect to determining whether police have improperly created the exigency upon which they rely to bypass the requirement of obtaining a warrant, the Superior Court has observed:

> The issue is not whether some action undertaken by the police in the performance of their duties contributed to the circumstances which created the exigencies justifying a warrantless entry. Rather, the inquiry is whether the police manufactured the exigency in a deliberate attempt to avoid the warrant requirement. The reasonableness of the police conduct depends upon the totality of the circumstances, not the least of which is "the nature of the investigation of which the warrantless activity is a part." *See United States v. Webster, supra* note 19, 750 F.2d at 327–328. If the police used a reasonable and legitimate technique which was employed for independent investigative purposes, apart from a desire to "invent" exigent circumstances, the police actions will not invalidate the warrantless entry. *See United States v. Socey,* 846 F.2d 1439, 1448–1449 (D.C.Cir.), *cert. denied,* 488 U.S. 858, 109 S.Ct. 152, 102 L.Ed.2d 123 (1988) ("the police should not be taxed with having failed to cover every eventuality.... As long as police measures are not deliberately designed to invent exigent circumstances, we will not second-guess their effectiveness").

*Commonwealth v. Peterson, supra,* 408 Pa.Super. at 37–38, 596 A.2d at 180 (footnote omitted). See: *United States v. MacDonald,* 916 F.2d 766, 772 (2d Cir.1990) (en banc), *cert. denied,* 112 U.S. 1177, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991) ("[W]hen law enforcement agents act in an entirely lawful

manner, they do not impermissibly create exigent circumstances."). See also: *State v. Hutchins*, 116 N.J. 457, 561 A.2d 1142 (1989). It has been held that "a delay in obtaining a warrant is more likely to be reasonable when part of an 'immediate, ongoing investigation' rather than a 'planned' or 'routine' search or arrest." *United States v. Webster, supra.* See: *United States v. Hultgren*, 713 F.2d 79, 87 (5th Cir.1983) ("[U]nlike the case of the 'routine' felony arrest, where a given individual and a distinct crime [are] involved, the fluidity of an ongoing investigation of the distribution of narcotics makes the obtaining of an adequate search warrant more difficult to time in the flow of events."). See also: *United States v. McCool, supra*, 526 F.Supp. at 1208–1209. In this regard, Professor LaFave has observed:

> [W]hen the occasion for arrest arises while the police are already out in the field investigating the prior or ongoing conduct which is the basis for the arrest, there should be a far greater reluctance to fault the police for not having an arrest warrant. Here, the presumption should be in favor of a warrantless arrest rather than against it, as the probabilities are high that it is not feasible for the police to delay the arrest while one of their number leaves the area, finds a magistrate and obtains a warrant, and then returns with it.

2 W. LaFave, Search and Seizure, § 6.1(f), at 601–602 (1987) (footnotes omitted).

After close and careful consideration, we conclude that in this case there were exigent circumstances which justified the warrantless entry by police to make an immediate arrest of the person who had sold cocaine to the undercover police officer. Primarily, it was the manner in which the sale of contraband had taken place which created the exigent circumstances. Appellant's modus operandi was calculated to frustrate the ability of others, particularly police conducting surveillance, to identify the person making the unlawful sale. The only certain way of establishing the identity of the offender was by a prompt finding of the person who had in his possession the pre-recorded money which had been used in making the purchase. Without the pre-recorded money, it is

doubtful that even the wearing of a ram's head ring would be sufficient to identify the wearer as the seller of cocaine. It was essential, therefore, that the police act promptly, even before a warrant could be obtained, to enter and arrest the person who had made the unlawful sale.

Most of the factors enumerated by the Pennsylvania Supreme Court in *Commonwealth v. Williams, supra,* to establish exigent circumstances were also present. First, it is beyond question in these times that the sale of cocaine must be deemed a grave offense. Secondly, more than minimum probable cause existed, for an undercover police officer had participated directly in the transaction for which an arrest was to be made. Third, the need to make an arrest arose during the course of an investigation by police in the field; it was not a pre-planned police excursion solely to make an arrest or to search the apartment. Fourth, the unlawful transaction occurred at 9:00 p.m., an hour at which the obtaining of a warrant may have entailed greater delay. Finally, the police were able to enter the apartment without using force and after knocking and announcing their presence and identity. Indeed, it was when the occupants declined to answer the knock and when noises suggested an attempt to escape or destroy evidence that the police opened the door of the apartment and entered.

 Under these circumstances, we conclude that exigent circumstances existed. However, even if exigent circumstances did not previously exist, they clearly arose after a police knock and identification were met by noises suggesting an attempt to escape or destroy evidence.[7] In a similar situation, the Court of Appeals for the Second Circuit observed:

> Most importantly, the agents' conduct was perfectly proper. By knocking and announcing themselves, they acted in

7. This is not intended to be an "alternate theory." The suspicious noises after the police knocked and identified themselves are merely an additional fact which must be considered, together with all other circumstances, in determining whether the warrantless police entry was constitutionally reasonable.

accordance with the law, attempting the "peaceful entry" contemplated in *Dorman,* 435 F.2d at 393.... Exigent circumstances are not to be disregarded simply because the suspects chose to respond to the agents' lawful conduct by attempting to escape, destroy evidence, or engage in any other unlawful activity. The fact that the suspects may reasonably be expected to behave illegally does not prevent law enforcement agents from acting lawfully to afford the suspects the opportunity to do so. Thus, assuming arguendo that there were no exigent circumstances before the knock, the agents' conduct did not impermissibly create the circumstances occurring thereafter.

*United States v. MacDonald, supra,* 916 F.2d at 771 (citations omitted). See also: *United States v. Acosta,* 965 F.2d 1248, 1254 (3d Cir.1992); *United States v. Lopez,* 937 F.2d 716, 723–724 (2d Cir.1991).

The Fourth Amendment was intended to protect people from unreasonable governmental intrusions into their legitimate expectations of privacy. It was not intended as a device to enable criminals to violate our laws without fear of identification. When the Fourth Amendment protections are abused by conduct calculated to conceal the identity of the offender, there may be a compelling need for immediate police action. This was such a situation. Police conduct, under the exigent circumstances present here, was eminently reasonable.

Because the arrest in this case was lawful,[8] the suppression court properly refused to suppress the contraband seized incidental thereto.

### VII. *Sufficiency of the Evidence to Prove Tampering With Physical Evidence*

[8] The remaining issue which has been raised by appellant concerns the sufficiency of the evidence to sustain his conviction for tampering with physical evidence. In evaluating a challenge to the sufficiency of the evidence, we view all

8. Our decision is based solely on safeguards contained in the Fourth Amendment of the United States Constitution. Provisions of the Pennsylvania Constitution were not argued before the suppression court and have not been argued in briefs submitted to this Court.

the evidence admitted at trial in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence was sufficient to permit the trier of fact to find that each and every element of the offense charged was established beyond a reasonable doubt. *Commonwealth v. Smith*, 523 Pa. 577, 581, 568 A.2d 600, 602 (1989); *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). The facts and circumstances which are established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [factfinder] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A.2d 95, 97 (1943).

The crime of tampering with physical evidence is defined at 18 Pa.C.S. § 4910 which, in pertinent part, provides:

### § 4910. Tampering with or fabricating physical evidence

A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:

(1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation....

18 Pa.C.S. § 4910(1). The Official Comment to Section 4910 of the Crimes Code provides that "[t]he purpose of this section is to specifically penalize prehearing or investigation fabrication or tampering as a broad application of 'obstructing justice.' It should be emphasized that this section applies to investigations as well as trials and other formal hearings." 18 Pa.C.S. § 4910, Official Comment—1972. Section 4910 of the Crimes Code is derived from Section 241.7 of the Model Penal Code, the Comment to which provides further as follows:

3. **Tampering with Physical Evidence.** Paragraph (1) punishes one who "alters, destroys, conceals or removes." This expansive statement of the proscribed conduct covers virtually any kind of tampering. The range of items protected against tampering includes "any record, document or thing."

. . . .

The limiting factor in Paragraph (a) is the requirement of specific intent. The statute punishes any kind of tampering with any document or thing, but only if the defendant acts "with purpose to impair its verity or availability" in an official proceeding or investigation. This designation of specific purpose identifies the ultimate evil as obstruction of justice rather than destruction of property and restricts the scope of the offense to persons who consciously intend to accomplish the forbidden harm. Otherwise, destruction of records may be conduct too ambiguous to support imposition of penal sanctions. It may betoken nothing more than housekeeping or a desire to protect personal privacy. Section 241.7 therefore applies only when the conduct is undertaken with purpose to impair verity or availability of a record in a proceeding or investigation.

Model Penal Code, § 241.7, Comment at pp. 179–180. See also: *Commonwealth v. Neckerauer,* 421 Pa.Super. 255, 263–66, 617 A.2d 1281, 1286–1287 (1992) (en banc). To obtain a conviction under 18 Pa.C.S. § 4910(1), therefore, "the prosecution must demonstrate that the [defendant] believed that an official proceeding or investigation was pending or about to be instituted." *Id.* at 264, 617 A.2d at 1286.

The evidence relevant to the tampering with physical evidence charge in the instant case was that police went to the apartment from which appellant had been selling cocaine, knocked on the door, identified themselves as police and, upon hearing shuffling noises from within, entered the apartment and found appellant in a bathroom dumping packets of cocaine into the toilet. Appellant argues that this evidence was insufficient to sustain his conviction for tampering with physi-

cal evidence because the Commonwealth failed to prove that he was aware of the police investigation when he was arrested and, hence, could not establish that he attempted to destroy the cocaine in order to impair an investigation which was pending or about to be instituted. He suggests that his motive in dumping the cocaine was to avoid arrest and not to impair an investigation of which he was unaware.

After careful review, we are satisfied that the Commonwealth's evidence established, beyond a reasonable doubt, that appellant committed the crime of tampering with physical evidence as defined at 18 Pa.C.S. § 4910(1). The trier of fact could reasonably infer that appellant had become aware that his drug dealing was under investigation when he heard the police knock at his door and announce their presence. Appellant's reaction, by running into the bathroom and attempting to get rid of the evidence, readily confirms his awareness of a police investigation and his intent to impede the same. In this regard, we agree with the Commonwealth that "it is absurd to suggest that [appellant] attempted to destroy the evidence for any reason *other* than to keep it out of the hands of police.... Certainly, by destroying evidence to avoid arrest, [appellant] necessarily demonstrated his intent to impair a police investigation." Therefore, we reject appellant's challenge to the sufficiency of the evidence to establish that he tampered with physical evidence.

The judgment of sentence is affirmed.

DEL SOLE and JOHNSON, JJ., file dissenting opinions.

DEL SOLE, Judge, dissenting.

I respectfully dissent from the Majority's conclusion that exigent circumstances existed in this case simply as a result of the manner in which a drug sale was conducted through a slot in a door. I also cannot accept the Majority's alternate conclusion that if exigent circumstances did not originally exist, they arose when the police heard "noises" behind the door after they knocked and identified themselves. I believe

that there is no evidence of any exigencies which would justify the absence of a warrant in this case.

The Majority writes that it was the particular "modus operandi" which created the exigent circumstances. They reason that the sale of drugs by means of a hole in a door frustrated police surveillance and made the police uncertain of the offender's identity. I believe that neither the frustration of police surveillance or the need to identify a suspected criminal are circumstances which can be classified as exigent. Police work by its nature requires police to engage in surveillance which is often frustrated by those who seek not to be detected, and very often the police are seeking to identify an unknown perpetrator of a crime. Although in both circumstances police may need to enter a dwelling to aid them in apprehending a criminal, these facts alone do not, in my view, create exigent circumstances which would allow for such action despite the absence of a warrant.

Although the Majority provides a lengthy discussion of the state of the law concerning warrantless arrests, it does not cite to any case where exigent circumstances were held to exist in circumstances similar to those found in the instant case. Instead it refers to the factors contained in *Commonwealth v. Williams*, 483 Pa. 293, 298–299, 396 A.2d 1177, 1179–1180 (1978). It holds that most of the factors enumerated in *Williams* were present: the sale of cocaine could be classified as a grave offense, the police had probable cause to believe the suspect committed a crime and could be found inside the premises, the need to make an arrest arose during the course of an investigation and the entry occurred in the evening. While I cannot dispute that some of the factors listed in *Williams* existed in this case, others did not. The police possessed no evidence which would cause them to believe that the suspect was armed and, more importantly in my view, there was no evidence that the suspect was likely to escape if not swiftly apprehended. Furthermore, some of the factors listed in favor of the police action would not have existed if it were not for the police conduct in this case. Although the need to arrest occurred in the evening and during the course

of an investigation, it was the police who initiated these events by means of a controlled buy. While I do not suggest that the police conduct in this case was designed to "invent" exigent circumstances, neither should it provide the means to proceed without a warrant.

There are cases which in the past have involved circumstances similar to those found instantly and which support my position that exigent circumstances did not exist merely as a result of the manner in which this drug sale was conducted.

In *Commonwealth v. Williams*, 411 Pa.Super. 586, 602 A.2d 350 (1992), an undercover police officer made a controlled purchase of cocaine by approaching a woman seated on a porch, advising her that he needed "two" and handing her prerecorded money. Cocaine was passed from inside the home by the opening of a floorboard. As the officer walked away from the house, someone said as they passed him, "hello officer." After advising his supervisor of the identification, a decision was made to immediately enter the premises and conduct a search. In viewing these circumstances under a claim that the police acted without a warrant and absent exigent circumstances, the court focused on the unplanned identification and concluded that the police action was proper. The court dismissed the appellant's claim that there was no evidence that anyone in the house overheard the greeting, and stated:

> By no means should we confine the showing of the exigent circumstances to the discrete event of the greeting; instead the problem was created when a person with apparent ability to blow Rone's cover approached the house. It could logically be inferred, not that the initial greeting was heard, but that the observation would be repeated.

*Id.* at 592, 602 A.2d at 353.

Similarly in *Commonwealth v. Peterson*, 408 Pa.Super. 22, 596 A.2d 172 (1991), (plurality opinion) *allocatur granted*, 530 Pa. 641, 607 A.2d 252 (1992), unique facts involved in a drug sale purchase with an unseen seller were said to provide the police with exigent circumstances in which they could act

without a warrant. Therein, police conducted a controlled buy at a "gate house" where the transaction was completed through a hole in a door. The money used in the controlled buy was treated with a dye, which after being handled would stain the person's hands bright blue. The court noted that the discovery of the dye would alert the seller to the police presence and stated that "[t]he use of the dye made prompt police action imperative" because the seller was likely to destroy the evidence and/or flee the premises. *Id.* at 36, 596 A.2d at 179. The court also found that "even absent the blue dye investigative technique, the modus operandi of the 'gate house' operation made it unlikely that, had the police left to obtain a warrant, any remnants of the operation would have remained upon their return" *Id.* The suppression court in *Peterson* heard testimony that a gate-house operation involved a very fast turnover and that the police were unable to effectively conduct surveillance of the building while a warrant was being secured.

In a concurring opinion Judge Hoffman wrote that he agreed "with Judge Beck and the court below that the tactic employed in this case was reasonable only because of the unique nature of a 'gate house'". *Id.* at 50, 596 A.2d at 186. Judge Hoffman "frown[ed]" on the use by police of the blue dye to identify the person selling cocaine and labeled such practice "'police created' exigencies." *Id.* In dissent, Judge Popovich wrote that he could "see no reason why the police did not procure a search warrant before effecting an entry into the gate house" and that the police "manufactured exigent circumstances to conduct a search." *Id.* at 39, 596 A.2d at 180.

The facts of the instant case provide far less reason to justify a search absent a warrant than the facts found in *Williams* and *Peterson.* The previous cases involve situations where the suspects may have been, or were about to be alerted to police presence which would allow time for them to destroy evidence. In *Peterson* even this fact was not accepted by the majority of the panel as a reason to justify a warrantless search because it was the police who placed a dye on the money which made immediate action necessary. However,

the additional fact that the sale was made at a gate-house operation where no one lived and where the suspects were not expected to stay for any length of time, and where the police were unable to conduct surveillance without being detected, caused the majority of the panel to rule that the police action was reasonable. No similar exigencies can be found in this case. Here there is no testimony that those inside the premises were or were about to be alerted to police presence. In this case there is no testimony which would indicate that the police could not conduct a surveillance of the premises while a warrant was obtained. There is also no evidence that the sale was made at a "gate-house" where no one resided and the suspects would not be expected to stay. In contrast the testimony offered at the suppression hearing was that the sale was made through the door of an occupied apartment, that the police were able to observe the premises with binoculars without being seen and that it would have been difficult for anyone to exit the premises except by way of the front door. N.T. 9-24-90 at 45-46.

I find this case more in keeping with this court's decision in *Commonwealth v. Rispo,* 338 Pa.Super. 225, 487 A.2d 937 (1985). In *Rispo* a police informant made a prearranged meeting with another in order to purchase methamphetamines. The seller advised the informant that he would have to make a call to obtain the drugs, and after doing so, the two left together and traveled to the appellant's home. The seller entered the residence and obtained the drugs. After the seller returned and he and the informant drove off they were stopped by the police. Officers also went to the appellant's home and approached the door, with guns drawn. The appellant's ten-year-old daughter opened the door before anyone knocked and the police entered, arrested the appellant and seized the marked money used in the drug transaction. In ruling on a suppression motion the trial court held that exigent circumstances justified the failure of the agents to procure a search and/or arrest warrant prior to entered the premises. This court disagreed and stated:

If the agents had not approached the house but had maintained their surveillance until a warrant was obtained, there is no reason why the evidence sought to be seized would have been destroyed because the occupants of the house were unaware of the police surveillance. There is no evidence in the record to show that the occupants of the house had been tipped off or became suspicious after Christopher, a familiar family acquaintance, visited the home and spoke with appellant. We also find it unlikely that anyone would destroy $7,500 (or $6,300) in cash if he did not know that the bills were marked. Additionally the agents had no reason to believe that the occupants of the house were armed or were threatening anyone because the crime involved was not a violent one and there had been no indication of danger. The police could have kept the residence under covert surveillance in relative safety until a warrant was obtained.

*Id.* at 233–234, 487 A.2d at 941.

I find the rationale of *Rispo* equally applicable to the matter before us. Here too there is no indication that the police could not have waited until they obtained a warrant before entering the premises. There is nothing which made the circumstances before them exigent. Those inside the apartment were unaware of police presence, and they were unlikely to leave the building except by a front door which the police were observing through binoculars without being seen. In my view exigent circumstances would not have arisen unless some unforeseen event occurred during the planned controlled buy.

I certainly do not subscribe to the Majority's alternative position that, even if exigent circumstances did not originally exist, they arose after the police knocked on the door and heard noises inside. The knock on the door was only preparatory to their decision to enter without a warrant and absent the authority to do the latter, I see no justification to permit the police entry. Law enforcement authorities cannot be allowed to knock on the door of every person who they have probable cause to believe has committed a crime and, when they hear "noise" inside, be allowed to make a warrantless

entry. If the warrantless entry was not initially justifiable based upon probable cause and exigent circumstances, the police cannot be permitted to create the exigencies by knocking on the door and awaiting suspicious noises.

For the above reasons I would rule that the suppression court erred in refusing to suppress evidence from the warrantless entry made by the police. The absence of exigent circumstances in this case makes Appellant's arrest illegal and requires, in my view, the suppression of the seized evidence.

JOHNSON, Judge, dissenting.

I join, in its entirety, the Dissenting Opinion of my eminent colleague, the Honorable Joseph A. Del Sole. I agree with Judge Del Sole that there is no evidence of any exigencies which would justify the absence of a warrant in this case.

With regard to the Commonwealth's argument that James Govens lacks standing to challenge police conduct in this case, I believe that this court should not attempt to set forth, as does the Majority, the current state of the law in this area. As the Majority correctly points out, the standing of Govens was assumed at the time of the suppression hearing; the suppression court made no findings on this issue; and the Commonwealth raises this issue for the first time on appeal. The issue is clearly waived.

For a somewhat similar reason, I am concerned that the Majority, in Section V of the Majority Opinion, discusses the authority to make a warrantless arrest in a public place. I agree with the Majority that no attempt was made to arrest Govens in a public place. The Commonwealth has not advanced any argument on that basis. I do not understand, therefore, why this Court, on this appeal, should review the authority to make a warrantless arrest in a public place.

Finally, I must respectfully dissent from Section VII of the Majority Opinion, along with its conclusion that the evidence in this case was sufficient to establish the crime of tampering with physical evidence.

The statute, 18 Pa.C.S. § 4910, requires as an element of the crime that a person believe that an official proceeding or investigation is pending or about to be instituted. My colleagues do not inform me as to how a drug bust fits comfortably into a common sense definition of an "official proceeding or investigation." Nor does the majority persuade this writer as to why running into a bathroom and attempting to flush drugs down a drain constitutes either (a) awareness of an official proceeding or investigation, or (b) an act of destroying or removing the drugs with the specific intent to impair their availability in such proceeding. Both of these elements are required to be proved in order to sustain the charge.

The majority states that:

[t]he trier of fact could reasonably infer that appellant had become aware that his drug dealing was under investigation when he heard the police knock at his door and announce their presence.

Majority Opinion, 429 Pa.Superior Ct. 490, 632 A.2d at 1329. This would attribute more knowledge to the defendant than was possessed by the arresting officers. The knock on the door was not for investigative purposes but limited to the presumed right of the police to arrest the person unlawfully delivering a controlled substance through the door. If the police were entering to complete, or effectuate, an arrest, how can we contend that the occupants of the apartment were aware of some broader investigation?

The Commonwealth has not, and could not, argue that the police could have entered the apartment without a warrant, arrested Govens, and then proceeded—without a warrant—to conduct an exhaustive search of the apartment as part of any investigation or official proceeding. Probable cause for such an investigation was lacking. How then could the defendant be saddled with a belief that an illegal investigation was about to be instituted?

To the extent that the Commonwealth seeks to minimize the importance of the conviction on tampering with evidence on the basis that the sentencing court imposed a sentence of "guilty without further penalty", I must disagree. The majes-

498

ty of the Commonwealth should be above what appears to this writer to be nothing more than creative charging in this instance. My fear is that our somewhat casual approval of this tactic will result in placing yet another arrow in the quiver of our drug prosecution arsenal, an additional weapon which, in my judgment, would constitute ineffective overkill in addition to being beyond the clear language of the statute.

Accordingly, I respectfully dissent. I would reverse the conviction for tampering with physical evidence on the basis of insufficient evidence and order Govens discharged as to this count.