617 A.2d 1281

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John Raymond NECKERAUER, Jr.**

Superior Court of Pennsylvania.

Argued June 1, 1992.

Filed Dec. 10, 1992.

John A. Kopas, III, 1st Asst. Dist. Atty., Fairchance, for Com.

Irving L. Bloom, Greensburg, for appellee.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, OLSZEWSKI, MONTEMURO, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge.

The Commonwealth appeals from the October 19, 1990 Order granting John R. Neckerauer, Jr.'s Omnibus Pretrial Motion to Quash Information/Petition For Writ of Habeas Corpus and dismissing the charges. Mr. Neckerauer, appellee, had been charged with obstructing administration of law or other governmental function (18 Pa.C.S.A. § 5101), tampering with or fabricating physical evidence (18 Pa.C.S.A. § 4910), hindering apprehension or prosecution (18 Pa.C.S.A. § 5105(a)(3, 5)), and two counts of criminal conspiracy (18 Pa.C.S.A. § 903).

This case resulted from a Pennsylvania State Police investigation of the disappearance of Ada J. Groomes from Scottdale, Pennsylvania, in October 1988. According to the preliminary hearing testimony of Trooper Hill, the State Police contacted many people and conducted interviews. Donald and Ada Groomes owned a 1976 Dodge motor home which Mr. Groomes reported missing on October 26, 1988. Mrs. Groomes was believed to be missing on October 7, 1988, and the motor home was believed to be missing about one day prior to her disappearance. It was very important to locate the motor home because it might provide evidence as a crime scene or provide information as to the whereabouts of Mrs. Groomes. The police used several methods to locate the missing motor home including the dissemination of fliers with a photo of Mrs. Groomes and of the motor home, and the news media was also contacted.

Police initially talked to appellee by telephone regarding the motor home and Mrs. Groomes' disappearance in early November of 1988. Trooper Hill inquired about a garage rental in Uniontown, and they discussed the two one-hundred dollar bills with the name Bud written on them found in Mr. Groomes' truck; appellee's nickname is Bud. Trooper Hill spoke with appellee again in May 1989 at his residence and in the presence of his girlfriend, Linda Gettemy, regarding Mrs. Groomes and the motor home. Both denied having any knowledge of the location of the woman or the motor home. Appellee told Trooper Hill that he was familiar with the motor

home since Mr. Groomes parked it in his driveway and lived in it on one occasion when Mr. Groomes left his wife. Based upon information from Mr. Groomes, appellee and his girl-friend told the trooper they believed that Mrs. Groomes was driving the motor home out in Arizona because she had joined some kind of a cult.

At the preliminary hearing, Trooper Taylor testified that, in October 1989, a Mr. Lofstead, from Tampa, Florida, indicated that he was in possession of the motor home involved in the Groomes case. Mr. Lofstead informed the trooper that appel-lee had driven the motor home to his property and told him that the motor home was being stored there for a friend entangled in a divorce dispute and that the friend did not want his wife to have access to the motor home. After Trooper Taylor obtained information that the motor home on Lof-stead's property was in fact the Groomes' motor home, he immediately received a call from appellee explaining that he had been in possession of the motor home and had been given the motor home by Mr. Groomes to use two days prior to the disappearance of Mrs. Groomes. Appellee also stated that he was aware of the location of the motor home since that time. Appellee told Trooper Taylor that prior to bringing the motor home to Florida, he had taken the motor home to Virginia where he was working on a construction site. Trooper Taylor asked appellee why he had not apprised Trooper Hill of the location of the motor home when Hill interviewed him earlier, and appellee responded that Hill had never specifically asked him about the motor home, only about Mrs. Groomes' disap-pearance.

Trooper Craig also testified at the preliminary hearing that he continued the investigation to Williamsburg, Virginia, where he talked to several people. During an interview, Mr. Shaulis, told the trooper that he worked as a mechanic at the job site where appellee was working. Mr. Shaulis became acquainted with appellee in May of 1988 and he saw appellee with the motor home in October of 1988. Appellee's girl-friend, Ms. Gettemy, was also present on two occasions with the motor home. The trooper proceeded to Fair Oaks Camp-

grounds in Williamsburg where he spoke with a Ms. Rigleman who informed him that, based on her documents, appellee stored a twenty-six foot Diplomat motor home at the campground from November 19, 1988, until March 23, 1989. Upon contacting Mr. Lofstead in Florida by telephone, Trooper Craig was told that appellee transported the motor home to Lofstead's residence on March 27, 1989. None of the Pennsylvania troopers who testified at the preliminary hearing went to look at the motor home after it was found, and, when the motor home was processed by the Hillsborough Sheriff's Department in Florida, they found no evidence of a crime. Mrs. Groomes has not been located.

The magistrate determined that the Commonwealth had presented sufficient evidence to show that appellee and Linda Gettemy willfully concealed evidence knowing that it was the focal point in a police investigation, and that a *prima facie* case had been established on the charges filed against the defendants. Appellee then filed the omnibus pretrial motion to quash information/*habeas corpus* petition which was granted by the trial court based on the identical reasoning applied in *Commonwealth v. Gettemy*, No. 1139 1/5–4/5, Franks, J. (Fayette Co. 1989),[1] and the Commonwealth appealed the dismissal of the charges. On appeal, the Commonwealth argues that there was sufficient evidence presented to establish a *prima facie* case with respect to all of the charges against appellee. We affirm in part and reverse in part.

■ Initially, the Commonwealth submits that providing false answers in response to questions by law enforcement officials is conduct constituting the crime of hindering apprehension or prosecution in violation of 18 Pa.C.S.A.

1. Linda Gettemy, appellee's girlfriend, was also charged with obstructing administration of law, tampering with or fabricating physical evidence, hindering apprehension or prosecution and conspiracy. Ms. Gettemy's omnibus pre-trial motion to quash/*habeas corpus* petition was granted and the charges were dismissed. The Commonwealth appealed this order to the Superior Court and we affirmed. *Commonwealth v. Gettemy*, 404 Pa.Super. 504, 591 A.2d 320 (1991), *alloc. denied* 529 Pa. 645, 602 A.2d 856 (1992).

§ 5105(a)(5) [2], which states:

> (a) Offense defined.—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:

> .    .    .    .    .

> (5) volunteers false information to a law enforcement officer.

The Commonwealth argues that since false information regarding the location of the motor home was provided by appellee in response to Trooper Hill's questions, that a crime has been made out under the statute.

The Commonwealth disagrees with this court's recent opinion in *Commonwealth v. Gettemy, supra,* wherein we affirmed the trial court's dismissal of the charges against appellee's girlfriend, Linda Gettemy. In that case, we were presented with an issue of first impression and the Commonwealth raises the very same legal question today, urging us to overrule *Gettemy.* Ms. Gettemy argued that section 5105(a)(5) did not apply in her case because she did not *volunteer* the false information to the police as prohibited by the statute. We agreed with this contention and found it necessary to consider the legislative intent to ascertain exactly what conduct was contemplated and proscribed by section 5105(a)(5). Our analysis began with the definition of the term "to volunteer" and we stated, "[T]o offer (oneself or one's services) for some undertaking or purpose; ... to give, bestow, or perform *without being asked* ...; to say, tell, or communicate voluntarily.... *The Random House Dictionary of the English Language,* copyright 1981; emphasis supplied." *Gettemy,* 404 Pa.Super. at 509, 591 A.2d at 323. We further noted that

> [T]he courts of New Jersey were faced with this exact issue in *State v. D'Addario,* 196 N.J.Super. 392, 482 A.2d 961 (1984). The New Jersey Superior Court stated that this definition, particularly the emphasized language, supports the conclusion that the meaning of 'volunteer' as used in

**2.** Before the charges against appellee were dismissed, he was charged with sections (a)(3) and (5) of 18 Pa.C.S.A. § 5105, however, the Commonwealth only raises an issue with respect to subsection (a)(5).

N.J.S.A. 2C:29-3a(7), is that the accused must take the initiative in giving false information. We point out that the wording of the New Jersey statute is identical to that of the Pennsylvania statute, as both statutes are derived from the Model Penal Code. The court in *D'Addario*, stated that the statute applied only to those persons who take the initiative in supplying false information to law enforcement officials.

Recognizing that we are not bound by the decisions of a sister state, we, nevertheless find the reasoning of the New Jersey Court to be persuasive. The facts of the instant case make it clear that Appellee did not take the initiative in supplying false information to the law enforcement officers. Her answers, misleading as they were, were given in response to the officers questions. Additionally, the Official Comment to 18 Pa.C.S. § 5105 states that this section is derived from Section 242.3 of the Model Penal Code. The comment to this section provides:

> Paragraph (5) prohibits volunteering false information to the law enforcement authorities. Mere failure to report a crime is not proscribed by this section. Neither is giving misleading or even false answers to inquiries initiated by the police.... This provision is intended to reach those who take the initiative in throwing the police off track.

*Gettemy*, at 509, 591 A.2d, at 323. We concluded that providing fallacious statements in response to questions initiated by law enforcement officers does not constitute the type of conduct defined as hindering apprehension or prosecution under 5105.

Appellee also cites the New Jersey supreme court case *State v. Valentin*, 105 N.J. 14, 519 A.2d 322 (1987), which upheld the rationale promulgated in *D'Addario*, as the leading case on providing false answers in response to police questions. The Commonwealth argues that appellee's reliance on these cases is misplaced. The Commonwealth believes that a grave injustice would be done to police investigations if this court continues to follow these cases, and that law enforcement would be without any means to pursue persons who deliberately provide police with false statements. The Com-

monwealth further contends that *Gettemy, supra,* should be reversed as it does not carry out the public policy of this state to deter individuals from hindering apprehension or prosecution, and the *Gettemy* interpretation permits persons who hinder apprehension to avoid being prosecuted due to a technicality. We do not agree.

We are aware that words of a statute must be construed according to their plain meaning. *Commonwealth v. Reeb,* 406 Pa.Super. 28, 593 A.2d 853 (1991). However, the word volunteer is ambiguous and capable of more than one meaning. Penal statutes must be strictly construed in favor of the accused. *Commonwealth v. Cunningham,* 248 Pa.Super. 219, 375 A.2d 66 (1977). "When interpreting a provision of the Crimes Code that contains language susceptible to differing constructions, it is proper to consider the purpose of the particular provision involved." *Commonwealth v. Williams,* 525 Pa. 216, 579 A.2d 869 (1990).

The Commentary to section 242.3 of the Model Penal Code, expounding upon its reasoning as to why giving false answers to police initiated inquiries did not constitute hindering prosecution or apprehension, stated:

> This solution represents a delicate policy judgment, premised in part on the fear that a wider reach for this subsection would invite abusive charges by police against persons interviewed in the course of investigating crime. It should be borne in mind that the law provides a means of compelling testimony under oath and that a penal policy with respect to unsworn false statements to the police has been carefully developed in Section 241.3 (unsworn falsification to authorities) and Section 241.5 (false reports to law enforcement authorities) of the Model Code. Paragraph (5) of this offense proscribes only the borderline case of volunteered misinformation to the police, which is not covered elsewhere.

Section 5105(a)(5) was enacted to preclude a very specific type of conduct that was not covered by other statutes. We will not enlarge the scope of this statute to reach conduct that our legislators did not intend to prohibit in enacting this particular

statute. Despite the very narrow interpretation of the hindering apprehension or prosecution statute by the Commentators to the Model Penal Code, Pennsylvania adopted the Model Penal Code's version of this statute almost verbatim and duly noted in the Official Comment to section 5105 that it is derived from section 242.3 of the Model Penal Code. This would indicate that our decision in *Gettemy* should be sustained and shall not be reversed with respect to this issue.

We are also asked to determine whether a *prima facie* case was presented against appellee relative to the crimes of tampering with or fabricating physical evidence, obstructing administration of law or other governmental function and criminal conspiracy. At the preliminary hearing stage, the Commonwealth has the burden of establishing at least *prima facie* that a crime has been committed and that the accused is probably the one who committed it. *Commonwealth v. Wojdak*, 502 Pa. 359, 466 A.2d 991 (1983). The Commonwealth is not required to prove guilt beyond a reasonable doubt at the preliminary hearing. *Commonwealth v. McBride,* 528 Pa. 153, 595 A.2d 589 (1991). However, to meet the burden of establishing a *prima facie* case, the Commonwealth must present evidence with respect to each of the material elements of the crime charged and to establish sufficient probable cause to warrant the belief that the accused committed the crime. *Id.*

The statute defining tampering with or fabricating physical evidence states in pertinent part as follows:

A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:

(1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation; ...

18 Pa.C.S.A. § 4910(1).

The Official Comment to this statute indicates that it is derived from section 241.7 of the Model Penal Code which refers to this crime as a form of obstruction of justice. The

commentary to the Model Penal Code emphasizes that the prosecution must demonstrate that the actor believed that an official proceeding or investigation was pending or about to be instituted. *See also* Official Comment 18 Pa.C.S.A. § 4910. Elaborating further, the comment states:

> Paragraph (1) punishes one who 'alters, destroys, conceals or removes.'.... The range of items protected against tampering includes 'any record, document or thing.'.... The limiting factor in Paragraph (a) is the requirement of specific intent. The statute punishes any kind of tampering with any document or thing, but only if the defendant acts 'with purpose to impair its verity or availability' in an official proceeding or investigation.

Model Penal Code § 241.7.

The Commonwealth asserts that the record in the case contains a number of indications that appellee knew where the motor home was located, and that he was aware of the pending investigation based upon the contact he had with the police. Trooper Hill testified at the preliminary hearing that he initially spoke with appellee on November 2, 1988, by telephone. The trooper informed appellee that he was trying to locate or obtain information concerning Mrs. Groomes and the motor home. During the conversation, Trooper Hill also talked to appellee about a garage rental in Uniontown and the one-hundred dollar bills found in Mr. Groomes' truck with the name "Bud" written on them. Appellee had not provided Trooper Hill with any information regarding Mrs. Groomes or the motor home during this particular conversation even though he was in possession of the motor home or knew where it was located. Trooper Craig testified at the preliminary hearing, and his investigation revealed, that appellee proceeded to Fair Oaks Campground in Williamsburg, Virginia, where he signed documents on November 19, 1988, to store a Diplomat motor home there which was picked up on March 23, 1989.

Contrary to the trial court's findings, the evidence presented was sufficient to establish a *prima facie* case that appellee tampered with physical evidence in violation of 18 Pa.C.S.A.

§ 4910. Based upon the testimony at the preliminary hearing, it is apparent, or it 'can at least be inferred, that when the police initially questioned him by phone that appellee knew a police investigation was pending or about to be instituted. Appellee shortly thereafter removed the motor home from Pennsylvania and had it stored in Virginia and then in Florida, knowing that it was the focus of a police investigation. These facts are sufficient to infer that appellee possessed the requisite specific intent to conceal the motor home and impair its availability in a police investigation.[3]

█ Appellee was also accused of obstructing administration of law or other governmental function set forth at 18 Pa.C.S.A. § 5101 which provides:

> A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

This section was also substantially based upon the Model Penal Code section 242.1. As stated in the comment to this section, the Commonwealth must present evidence that

3. On the facts as presented, appellee's case is distinguishable from the case involving Ms. Gettemy. In *Gettemy, supra,* we concluded that the Commonwealth failed to establish the elements of 18 Pa.C.S.A. § 4910 because the record, based on the investigating officer's testimony, only showed that Linda Gettemy was present in Virginia and Florida when the motor home was seen in those states, but nothing in the record revealed that Ms. Gettemy removed the motor home with intent to impair its availability. On November 2, 1988, Trooper Hill did not discuss the disappearance of Mrs. Groomes or the whereabouts of the motor home with Ms. Gettemy. The testimony reveals that Trooper Hill only talked to appellee over the telephone at which time he did not inform the police that he possessed the motor home and he then proceeded to remove the vehicle from the jurisdiction of Pennsylvania. In addition, it was appellee, not Ms. Gettemy, who contacted Trooper Taylor and informed him that Mr. Groomes had given the motor home to him two days before Mrs. Groomes was reported missing.

... the defendant *purposely* obstruct, impair, or pervert a governmental function by one of the specified means. Thus, the provision requires that the actor have a conscious objective to engage in the conduct proscribed by the offense. Section 242.1 further requires that the obstruction actually take place. Preparatory, incomplete, and equivocal conduct is excluded from the offense.... The generality of the crime has been confined by limiting its application to (i) violent or physical interference, (ii) breach of official duty, and (iii) any other act that is unlawful independently of a purpose to obstruct the government.

Model Penal Code § 242.1.

The Commonwealth argues that appellee's conduct is clearly prohibited by the obstruction statute.[4] As previously stated, appellee, after being informed on November 2, 1988, that the police were investigating the disappearance of Mrs. Groomes and the motor home, appellee promptly removed the motor home and took it to Virginia on November 19, 1988, for storage. Appellee's behavior demonstrates his conscious purpose to obstruct the police investigation. From November 1988 until October 1989, appellee engaged in a course of concealing physical evidence sought in an official investigation thereby obstructing justice. Although appellee did not use force or violence to accomplish this deed, sufficient *prima facie* evidence was presented at the preliminary hearing to show that appellee unlawfully tampered with physical evidence. Such activity would come within the reach of the obstruction statute which only requires that a person "intentionally obstructs, impairs or perverts the administration of law or other governmental function by force ... or *any other*

4. According to the comment to section 242.1 of the Model Code, the culpability requirements demand that the defendant's action be directed at interference with the official function. The offense encompasses violent and disorderly conduct that is intended to and in fact does obstruct the functioning of courts and other tribunals. The statute covers any affirmative act of physical interference, not specifically excepted, whether or not violence is involved. The commentators provide an example to illustrate that this crime reaches tampering with the vehicle of a law enforcement official to prevent his attendance at a proceeding or some other execution of duty.

*unlawful act....*" 18 Pa.C.S.A. § 5101 (emphasis added). Based on this evidence, a *prima facie* case had been established and appellee was properly bound over for trial.[5]

▮ Finally, appellee had been charged with engaging in a conspiracy with Ms. Gettemy and with Mr. Groomes.[6] Criminal Conspiracy is defined, pursuant to 18 Pa.C.S.A. § 903(a) as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

An individual is guilty of conspiracy if, with the intent to promote or facilitate a crime, he or she agreed to aid another person in the attempt, solicitation, planning, or commission of the crime. *Commonwealth v. Stein,* 401 Pa.Super. 518, 585 A.2d 1048 (1991). Because direct evidence of intent and agreement is often unattainable, conspiracy may be proven entirely from overt acts, relationship, conduct or circumstances of the parties. *Commonwealth v. Davis,* 312 Pa.Super. 85, 458 A.2d 248 (1983). The Commonwealth bases the conspiracy between appellee and Ms. Gettemy on the fact that

5. We note that in *Gettemy, supra,* we determined that 18 Pa.C.S.A. § 5101 did not apply because Ms. Gettemy's responses to the police officer did not constitute hindering apprehension or prosecution or tampering with physical evidence. Since her conduct did not fall under the "any other unlawful act" provision of the obstruction statute, all charges were properly dismissed.

6. The Commonwealth merely asserts that appellee and Mr. Groomes conspired but no argument has been set forth to support the statement. We assume that the Commonwealth has knowingly chosen to forego this argument and we shall not address it. *See Commonwealth v. Smith,* 389 Pa.Super. 606, 567 A.2d 1070 (1989) (failure to present an argument in the body of the brief to support a claim will result in waiver of the issue on appeal).

both were present and told Trooper Hill that Mr. Groomes had told them that his wife had taken the motor home to Arizona. The Commonwealth also relies upon the testimony of Trooper Craig that a woman stated that she saw appellee and Ms. Gettemy on the motor home in October 1988. The Commonwealth believes that this evidence shows a clear understanding between appellee and his girlfriend to violate the aforementioned criminal statutes. The Commonwealth further contends that appellee "had a focalization of effort in embarking upon the project of concealing the whereabouts of the motor home." Appellant's brief at 15.

This record is devoid of any evidence that appellee agreed with Ms. Gettemy to tamper with physical evidence or to obstruct the administration of law or other governmental function. The testimony that Ms. Gettemy was seen in the motor home or in the presence of the motor home with appellee does not establish the requisite elements of a conspiracy nor can a conspiracy be inferred based on this fact. Likewise, having determined that there was no unlawful act committed by Ms. Gettemy and appellee in giving false answers to police questioning in May 1989, there can be no actionable conspiracy based on this conduct.[7] Without evidence of an agreement between appellee and Ms. Gettemy at the time that the vehicle was removed from Pennsylvania and concealed in Virginia and Florida, we cannot conclude that a *prima facie* case of conspiracy between appellee and Ms. Gettemy had been established by the Commonwealth.

Order affirmed in part and reversed in part. Case remanded to the trial court for proceedings consistent with this Opinion. Jurisdiction relinquished.

---

**7.** We note that while the conduct alleged is not culpable under § 5105(a)(5), this conduct might well fall within the purview of § 5105(a)(3) which reads as follows: "(a) Offense defined.—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he: (3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence." However, although both appellee and Ms. Gettemy were charged under this section originally, the Commonwealth has not pursued its applicability on appeal.

ROWLEY, P.J., and WIEAND, J., concur in the result.

This case was decided prior to MONTEMURO, J., leaving the bench.