

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2001

# Acceptance Ins Co v. Sloan

Precedential or Non-Precedential:

Docket 00-2423

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Acceptance Ins Co v. Sloan" (2001). *2001 Decisions.* Paper 188.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/188

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 22, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2423

ACCEPTANCE INSURANCE COMPANY

      Appellant

v.

ROBERT H. SLOAN, BANKRUPTCY TRUSTEE FOR MON
VALLEY STEEL COMPANY, INC.; LARRY M. BOWERS;
GLADYS D. BOWERS, INDIVIDUALLY
AND
AS CO-ADMINISTRATORS OF THE ESTATE OF JOELENE
BOWERS, DECEASED; UTICA MUTUAL INSURANCE
COMPANY; NOBLE WINE; COMMONWEALTH
OF PENNSYLVANIA

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No. 98-cv-01647)
District Court Judge: William L. Standish

Argued: April 17, 2001

Before: ALITO, RENDELL, and FUENTES, Circuit  Judges.

(Opinion Filed: August 22, 2001)

      Russell J. Ober, Jr. (Argued)
      Kelly A. Reynolds
      Meyer, Unkovic & Scott LLP
      1300 Oliver Building
      Pittsburgh, Pennsylvania 15222
      Counsel for Appellant

Jan C. Swensen (Argued)
Alan H. Perer
Swensen Perer & Kontos
2710 Two PNC Plaza
Pittsburgh, Pennsylvania 15222
Counsel for Appellees Larry M.
Bowers and Gladys D. Bowers

Ashley W. Ward
Sites & Harbison
250 West Main Street,
Suite 2300
Lexington, Kentucky 40507
Counsel for Appellee Utica Mutual
Insurance Company

OPINION OF THE COURT

ALITO, Circuit Judge:

Acceptance Insurance Co. ("Acceptance") brought this action seeking a declaratory judgment to resolve its rights and duties under an insurance policy issued to Mon Valley Steel Co. ("Mon Valley"). The policy in question was a general liability policy for the Clyde Mine, located in western Pennsylvania. Acceptance's potential liability arose as a result of an action against Mon Valley brought by the parents of Joelene Bowers, who was pushed to her death through an open shaft in the Clyde Mine. Acceptance sought to establish that the Clyde Mine insurance policy was effectively terminated prior to Joelene Bowers's death and, thus, that Acceptance is not obligated to provide a defense for Mon Valley or to pay for any recovery.

The District Court entered summary judgment against Acceptance, holding that under regulations of the Pennsylvania Department of Environmental Protection ("DEP"), the Clyde Mine policy could not effectively be canceled until the DEP was notified. The District Court further held that no reasonable jury could find from the undisputed facts that Acceptance had notified the DEP of its cancellation of the Clyde Mine policy and that therefore

2

the policy was still in effect at the time of Joelene Bowers's death. We hold that, under the applicable DEP regulations, notification was not a necessary precondition of cancellation. We therefore reverse.

I.

In 1994, Mon Valley contacted independent insurance broker Phillip Harvey of Phillip J. Harvey & Co., Inc. ("PJH & Co.") to obtain general liability insurance for mining operations at the Clyde Mine. Harvey contacted Tri-City Brokers ("Tri-City") to locate a policy. Through Tri-City's brokerage agreement with Acceptance Risk Managers, Acceptance's underwriters, Acceptance issued a policy to Mon Valley.

On February 13, 1995, Acceptance issued a certificate of insurance to Mon Valley for a general liability policy covering the Clyde Mine. The policy's coverage was to be effective from December 7, 1994, through December 7, 1995, and was subsequently extended through January 24, 1996. The insurance policy contained no provision requiring Acceptance to notify the DEP before canceling the policy.

Mon Valley's last valid permit to operate the Clyde Mine had expired on October 31, 1994, and Mon Valley had ceased all mining operations on approximately that date. Harvey, acting on Mon Valley's behalf, submitted the certificate of insurance to the DEP as proof of the requisite insurance coverage in support of Mon Valley's application for a renewal of its expired mining permit. On March 21, 1995, and again on May 3, 1995, the DEP notified Mon Valley that its application for a mining license could not be processed because of several deficiencies in the application and the accompanying proof of insurance. Because Mon Valley did not make the necessary corrections or request an informal hearing, the DEP denied the license application on November 9, 1995.

Mon Valley, which financed the policy through First Premium Services, Inc. ("First Premium"), never actually made a premium payment on the policy. On March 7, 1995, First Premium used its power of attorney pursuant to

an agreement with Mon Valley to notify Acceptance to cancel the policy for nonpayment of premiums. Although it is not clear on what date Acceptance actually canceled the policy, it is undisputed that Acceptance took actions which, absent a statutory or regulatory bar, would have terminated the policy by July 15, 1995, at the latest.

PJH & Co. had a general business practice of sending notices of cancellation to both certificate holders and state administrative agencies. Harvey testified that a notice of cancellation addressed to the DEP was present in PJH & Co.'s files. However, Harvey could not testify from personal knowledge concerning the actual preparation or mailing of the notice. Moreover, the DEP file on Mon Valley did not contain a copy of the notice.

In March 1998, the Bowers commenced an action in the Court of Common Pleas of Greene County, Pennsylvania, captioned Bowers v. Mon Valley Steel Co., Inc., et al., Case No. AD-24 (1998) (the "Greene County suit"), to recover damages relating to the murder of Joelene Bowers at the Clyde Mine on January 19 or 20, 1996. Acceptance then brought the instant action, seeking a declaratory judgment that the Clyde Mine policy was effectively canceled prior to Joelene Bowers's death and that Acceptance therefore had no duty to defend or indemnify Mon Valley in connection with the Greene County suit.

Following discovery, Acceptance moved for summary judgment, arguing that the undisputed facts showed that the Clyde Mine policy had been effectively terminated prior to Joelene Bowers's death. Acceptance argued that it had no duty to notify the DEP prior to cancellation because no contractual provision, statute, or regulation specifically so required. In the alternative, Acceptance argued that, by application of the Pennsylvania "mailbox rule," the undisputed facts gave rise to a presumption that a notice of cancellation had been received by the DEP and that there was insufficient evidence in the record to rebut that presumption.

The Bowerses and Utica also moved for summary judgment, arguing that the applicable DEP regulations mandated that Acceptance notify the DEP before its

4

attempted cancellation became effective. The Bowerses and Utica also argued that Acceptance had not provided sufficient evidence to trigger the mailbox rule. The Magistrate Judge issued a Report and Recommendation, concluding that "the DEP's coal mining regulations establish a strict administrative scheme which unequivocally prohibits an insurer from cancelling a policy without first providing notification to the agency." R. & R. at 12, App. at 18. In reaching this conclusion, the Magistrate Judge relied on 25 Pa. Code S 86.168(d), which outlines the requirements for insurance policies submitted with a permit application. The Magistrate Judge also concluded that Acceptance had not adduced sufficient evidence to show that notice had been given to the DEP. The Magistrate Judge wrote that Acceptance "c[ould] not overcome this significant and undisputed fact: the DEP's license file for Mon Valley does not contain a cancellation notice." R. & R. at 13, App. at 19. Accordingly, the Magistrate Judge recommended that summary judgment be granted to Utica and the Bowerses.

The District Court adopted the Magistrate Judge's recommendation, and Acceptance then took this appeal. Our standard of review with respect to the grant of summary judgment is plenary. Waldorf v. Shuta , 896 F.2d 723, 728 (3d Cir. 1990). The Appellees in this appeal are Utica Mutual Insurance Co. ("Utica"), the surety on reclamation and subsidence bonds posted on behalf of Mon Valley, and the Bowerses.

II.

Acceptance raises two issues on appeal. The first is whether the District Court erred in concluding that the DEP regulations require that a surface and underground coal mining general liability insurance carrier notify the DEP prior to canceling an insurance policy. The second issue is whether the District Court erred in concluding that the undisputed facts did not allow Acceptance to benefit from the presumption of receipt accorded to items placed in the mail under the Pennsylvania mailbox rule. We hold that Acceptance had no duty to notify the DEP before canceling

5

the policy, and we therefore need not reach the question whether Acceptance adduced sufficient evidence to take advantage of the Pennsylvania mailbox rule.

A.

Pursuant to the authority granted by the Pennsylvania Surface Mining Conservation and Reclamation Act of May 31, 1945, P.L. 1198, as amended, 52 Pa. Cons. Stat. Ann. SS 1396.1–1396.31, the DEP has issued regulations governing surface and underground coal mining and reclamation activities. See 25 Pa. CodeSS 86.1 et seq. Under these regulations, it is illegal to operate a coal mine in Pennsylvania without a permit from the DEP. See 25 Pa. Code S 86.11. Furthermore, 25 Pa. Code S 86.144 provides that an applicant for a coal mining permit must provide proof of adequate insurance:

> 86.144 Requirement to file a certification of liability insurance.
>
> Each applicant for a [mining] permit shall submit proof to the Department [of Environmental Protection] of liability insurance coverage for its mining and reclamation operations issued by an insurance company authorized to do business in this Commonwealth. The amount, duration, form, conditions, terms and method of proof of this insurance coverage shall conform to [25 Pa. Code] S 86.168 (relating to terms and conditions for liability insurance).

25 Pa. Code S 86.144. The regulations also outline the requirements of an applicant's insurance policy if a permit is to be granted:

> 86.168. Terms and conditions for liability insurance.
>
> (a) A permittee shall submit proof of liability insurance coverage before a permit or license is issued. The proof may consist of either a certificate filed at the time of license application and renewal thereof, or, otherwise annually filed with the Department certifying that the permittee has a public liability insurance policy in force

6

covering all of the permittee's mining and reclamation
operations in this Commonwealth.

. . . .

(d) The insurance shall include a rider requiring that the
insurer notify the Department 30 days prior to
substantive changes being made in the policy, or prior
to termination or failure to renew.

25 Pa. Code SS 86.168(a), (d) (emphasis added).

B.

Since the Pennsylvania Supreme Court has yet to
interpret the regulation in question in this appeal,"we
must predict how the state court would resolve these issues
should it be called upon to do so." Wiley v. State Farm Fire
& Cas. Co., 995 F.2d 457, 459 (3d Cir. 1993). We predict
that the Pennsylvania Supreme Court would interpret this
regulatory scheme, and specifically S 86.168(d), to mean
that Acceptance had no duty to inform the DEP of the
cancellation unless the insurance policy itself created a
duty to do so. Although the DEP presumably could have
issued a regulation directly requiring an insurer to notify
the DEP of cancellation of a mining insurance policy, the
DEP has not done so.

Unless a statute or regulation imposes some additional
requirement, "[w]here the right to cancel an insurance
policy is expressly reserved in the contract itself, then the
extent of the right and the conditions upon which it may be
exercised must be determined by reference to the contract."
Clairton City Sch. Dist. v. Mary, 541 A.2d 849, 851 (Pa.
Commw. Ct. 1988) (citing Hanna v. Reliance Ins. Co., 166
A.2d 877, 879 (Pa. 1961)). Neither Utica nor the Bowerses
argue that Acceptance failed to cancel the policy in
accordance with the policy's cancellation clause. Nor do
they contend that the policy contained the requisite rider or
any language equivalent to what was contained therein.
Rather, they argue that S 86.168(d) is ambiguous and that
we should interpret it to require notice to the DEP.

Pennsylvania has adopted the canon of statutory
construction that courts of the Commonwealth must

7

interpret unambiguous statutes according to their terms. See 1 Pa. Cons. Stat. Ann. S 1921(b) (Purdon's 1995); Anthony v. Koppers Co., 436 A.2d 181, 183 (Pa. 1991). When interpreting a Pennsylvania statute, we are to give the words of a statute their plain and ordinary meaning. Commonwealth v. Neckerauer, 617 A.2d 1281 (Pa. Super. Ct. 1992); Commonwealth v. Johnson, 612 A.2d 1382 (Pa. Super. Ct. 1992). The words are to be considered in their grammatical context. 1 Pa. Cons. Stat. Ann. S 1930 (Purdon's 1995). Moreover,

> sections of statutes are not to be isolated from the context in which they arise such that an individual interpretation is accorded one section which does not take into account the related sections of the same statute. Statutes do not exist sentence by sentence. Their sections and sentences comprise a composite of their stated purpose.

Commonwealth v. Lurie, 569 A.2d 329, 331 (Pa. 1990) (quoting Commonwealth v. Revtai, 532 A.2d 1, 5 (Pa. 1987)). These same principles of statutory construction apply to DEP regulations as well. See 1 Pa. CodeS 1.7; Bush v. Pa. Horse Racing Comm'n, 466 A.2d 254, 255-56 (Pa. Commw. Ct. 1983).

Instead of directly requiring that insurers notify the DEP upon cancellation of a policy, the text of S 86.168(d) provides that a permit applicant must secure a policy having a rider mandating notice to the DEP in the event of cancellation. The pertinent parts of S 86.168, read in conjunction, require the following: "A permittee shall submit proof of liability coverage . . . . The insurance shall include a rider requiring that the insurer notify the Department 30 days prior to substantive changes being made in the policy, or prior to termination or failure to renew." SS 86.168(a)-(d). The plain meaning of SS 86.168(a) and (d) is that the permittee must obtain suitable insurance in order to obtain a permit and that the insurance, in order to be suitable, must contain a rider requiring notice to the DEP. Section 86.168(d) places no direct obligation on the insurer. Indeed, when viewed in light of S 86.168(a), all of the provisions of S 86.168 speak to the obligations of

8

permittees and permit applicants -- not to the obligations of insurers.

Moreover, if, as Utica and the Bowerses argue, the regulation did directly require that the insurer provide notice, the requirement that a rider be included in the policy would be superfluous. "Such an interpretation would defy the axiom of statutory construction that `whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage.' " Commonwealth v. Lassiter, 722 A.2d 657, 661 (Pa. 1998) (quoting In re Employees of Student Servs., 432 A.2d 189, 195 (Pa. 1981)). The more logical explanation is that the DEP chose to place the burden on the insured to have the rider included in the policy and to have the policy form the basis of the insurer's duty. Thus, S 86.144 states that if the applicant wishes to have its application for a mining permit approved, "the amount, duration, form, conditions, terms, and method of proof of this insurance shall conform to S 86.168." This shows that the burden is on the permit applicant to have the rider placed in the insurance contract. Similarly, the requirement that proof of suitable insurance be submitted with a permit application suggests that DEP's means of ensuring that it receives notice of cancellation is to deny any permit application that is not accompanied by an insurance policy imposing such a duty on the insurer. If the interpretation of S 86.168(d) advanced by Utica and Bowers were correct, the DEP would have no need to deny a permit application that was not accompanied by such a policy.

In concluding that the regulation itself imposed a notice requirement, the Magistrate Judge relied in part on 2 Couch on Insurance S 31:19 (3d ed. 1996), which states that "[w]here statutory provisions require notice to a government agency in order to effect a cancellation of policy, such notice must be given to effect a cancellation, and conversely there is no cancellation where notice is given merely in accordance with the provisions of the policy." This statement is inapplicable to Acceptance's situation. Section 31:19 concerns the effect of the failure to notify a government agency "[w]here statutory provisions require notice to a government agency in order to effect a

9

cancellation of a policy." As discussed above, the relevant regulations here do not require notice to the DEP to effect a cancellation of the policy. Rather, the regulations require that policies contain notification riders. It is noteworthy that none of the cases cited in Couch involved a situation analogous to the one here, i.e., a situation in which the law, rather than directly requiring the insurer to provide notice, required a notification rider to be included in the policy.

For similar reasons, Metro Transportation Co. v. North Star Reinsurance Co., 912 F.2d 672 (3d Cir. 1990), on which Utica and the Bowers rely, is not apposite. In Metro Transportation, we noted that "whenever a statute or insurance policy provides for notice of cancellation , Pennsylvania law has mandated that an insurer's failure to comply with the provisions of the notice of cancellation results in the continuation of coverage regardless of any prescribed date of expiration." Id. at 682 (citations omitted) (emphasis added). We do not question that, if S 86.168(d) directly required Acceptance to provide notice of cancellation, then a failure to provide notice would have made an attempted cancellation ineffective. However, the principle of Pennsylvania law stated in Metro Transportation does not apply where, as in this case, there is no statute or regulation requiring notification.1 And, as we have stated, the policy contains no such requirement. We will not convert a statutory requirement of a rider into a mandate that the requisite language be deemed to be implicated in the policy if the rider is not in fact attached.

Our analysis of the text of S 86.168(d) is confirmed by a survey of analogous Pennsylvania regulations. In other similar areas, the DEP has explicitly placed the burden of giving notice directly on insurers. For example, the DEP has a permit system for the handling and disposing of residual

_____

1. The regulation in question in Metro Transportation required a taxi company to file a Uniform Carrier Bodily Injury and Property Damage Certificate of Insurance, known as a "Form E." "Form E . . . [itself] states
that the insurance policy -- and hence the coverage provided by the policy -- cannot be canceled without first giving[the Pennsylvania Public Utility Commission] thirty days [sic] notice." Id. at 678.

waste. See 25 Pa. Code S 287.1 et seq.. Section 287.101 outlines the requirements for receiving a permit. One of the requirements is that an applicant must "comply with the . . . insurance requirements of Subchapter E." Section 287.375, part of Subchapter E, states:

> (b) The operator shall submit proof of insurance under S 287.373 (relating to proof of insurance coverage) . . . .
>
> (c) The insurer may cancel or otherwise terminate an insurance policy by sending 60 days or other period prior written notice as may be authorized by the Insurance Department, to the Department and the operator, of the insurer's intention to cancel or otherwise terminate the insurance policy. The notice shall be sent to the Department and the insured by certified mail, return receipt requested. Prior to the cancellation or termination becoming effective, the operator shall provide the Department with proof of a replacement insurance policy sufficient to meet the requirements of this subchapter.

25 Pa. Code S 287.375(b)-(c) (emphasis added). This provision contrasts sharply with the regulation at issue in the present case. Whereas 25 Pa. Code S 287.375(c) places an obligation directly on the insurer to provide notice regardless of the provisions of the policy, 25 Pa. Code S 86.168 places an obligation on an applicant to have a rider requiring notice placed in the insurance contract. See also 25 Pa. Code S 271.383(f)(2) (regulating municipal waste management); 25 Pa. Code S 271.392 (g)(2) (same).

Finally, we note that our interpretation of the regulation is consistent with what we perceive to be the Legislature's objective, viz., ensuring that mining operations are not conducted without the type of insurance deemed by the Legislature to be necessary.[2] That goal is fulfilled by

_____

2. Consideration of legislative intent is not necessary in this case since the Pennsylvania legislature has provided that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. Code S 1922(b). However, we merely reconcile our interpretation with the general intent of the regulatory scheme in order to ensure that we

11

requiring that the party applying for the mining permit obtain liability insurance. See SS 86.67, 86.144. If the applicant has not obtained an insurance policy with a rider requiring notice of cancellation, the application should be rejected, and the applicant may not legally conduct a mining operation. See id. Thus, assuming that the DEP ensures that mining operations are not conducted without a permit, notification to the DEP of the cancellation of a policy is not necessary to prevent uninsured parties from conducting mining operations. Cf. Metro Transp. , 912 F.2d at 681 (goal of notice requirement for cancellation of automobile insurance policy for taxis is so that the State may revoke the taxi license if the insurance is canceled).

III.

In sum, we hold that, under Pennsylvania law, a surface and underground coal mining general liability insurance carrier has a no duty to notify the DEP before effectively canceling an insurance policy unless a notification provision is included in the insurance policy. We therefore reverse the District Court's July 17, 2000, order granting summary judgment against Acceptance and remand this case to the District Court for entry of an order granting summary judgment in favor of Acceptance.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

effectuate the Pennsylvania Legislature's other mandates that (1) "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly," 1 Pa. Code S 1921(a); and (2) "the General Assembly does not intend a result that is absurd," 1 Pa. Code S 1922(1).

12