J. A01003/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                         :          PENNSYLVANIA
             v.           :
                         :
TERESA LENZ,            :         No. 326 WDA 2014
                         :
         Appellant    :

Appeal from the Judgment of Sentence, January 6, 2014,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0001704-2013

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE AND ALLEN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED JUNE 17, 2015**

This is an appeal from the judgment of sentence entered on January 6, 2014, in the Court of Common Pleas of Allegheny County following Teresa Lenz's conviction of obstructing the administration of law ("obstruction"), 18 Pa.C.S.A. § 5101. We reverse.

The facts, as summarized by the trial court, are as follows.

> On December 24, 2012, Officer Warren Lillie of the Ross Township Police Department responded to a burglary call. Upon arriving at the residence where the burglary occurred, he spoke with the victim. The victim, Pastor Michael Guthrie, explained to Officer Lillie that he believed his niece, Jessica Hirth and her boyfriend, Jeremiah Kelly, were responsible for the burglary. Pastor Guthrie further advised Officer Lillie that Hirth and Kelly were staying at Kelly's parents' house which was located a very short distance from Pastor Guthrie's residence. Office[r] Lillie, accompanied by Pastor Guthrie, then proceeded to Kelly's residence.

Upon arriving at Kelly's residence, Officer Lillie walked around the perimeter of the property to determine if there were any security issues. All of the windows and doors were closed. He then approached the front door and knocked. At that point, the defendant, who is Kelly's mother, peeked through the window. Several minutes elapsed before she opened the front door. Officer Lillie observed that the hallway light leading to the second floor of the residence was on. Officer Lillie asked her if he could search the residence for Hirth and Kelly. The defendant was advised that Hirth and Kelly were suspected of burglarizing Pastor Guthrie's residence and taking many things, including a loaded firearm. The defendant advised Officer Lillie that she would have to check with her husband. She closed the door. Through a front window, Officer Lillie was able to observe the defendant walk up the steps to the second floor of the residence. A few minutes later, the light in the second floor hallway went out and the curtains were drawn on the windows that would have enabled Officer Lillie to see into the living room and that stairwell between the first and second floors. About a minute later, the defendant opened the door and welcomed Officer Lillie and Pastor Guthrie into the residence. She led them both to the second floor to a bedroom. She informed them that the bedroom belonged to Kelly. Upon entering the bedroom, Office Lillie observed a cloud of cigarette smoke along with an ashtray that containing [sic] cigarette butts. Also found in the room were a number [of] items that were taken from Pastor Guthrie's home.

At that point, Officer Lillie advised the defendant that he believed she was deceiving him and he explained that it was a criminal offense for her to lie to him about the whereabouts of someone being sought for committing a criminal act. Officer Lillie advised Pastor Guthrie to go outside so he could secure the residence. Shortly after Pastor Guthrie left the residence, Officer Lillie heard him scream, "Jessica, stop! Come back!" Officer Lillie then went outside and both Hirth and Kelly were

observed fleeing the residence, running from the area of the garage door. As both of them were fleeing, additional items from Pastor Guthrie's residence were dropped. While Officer Lillie was at the residence, the defendant's husband came upstairs from the basement to inquire what was happening.

After Hirth and Kelly fled, Officer Lillie returned to the residence. The defendant apologized for her actions, indicating that she didn't realize how serious the matter was. She indicated that she knew Kelly was a fugitive. Days later, after the defendant was taken into custody in this case, she again apologized to Officer Lillie for helping Kelly escape the residence.

Trial court opinion, 7/19/14 at 1-3.

Appellant was charged with two counts each of obstructing the administration of law and hindering apprehension; however, prior to trial, the Commonwealth withdrew one count under Section 5101 and both counts under Section 5105. A bench trial was held before the Honorable Anthony M. Mariani, and appellant was convicted of the remaining count. On January 6, 2014, appellant was sentenced to one to two months' incarceration to be followed by one year of probation. On January 15, 2014, appellant filed a motion for reconsideration; and on January 31, 2014, an order was issued for appellant to be paroled on February 5, 2014. This timely appeal followed on February 27, 2014. (Docket #8.) The following issue has been presented for our review:

> I. WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE GUILTY VERDICT FOR THE CHARGE OF OBSTRUCTION OF THE ADMINISTRATION OF

> LAW, AS THE DEFENDANT HAD NO CRIMINAL INTENT AND DID NOT COMMIT AN UNLAWFUL ACT?

Appellant's brief at 5.

Prior to addressing this issue, we will recite our standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa.Super. 2008), *appeal denied*, 980 A.2d 606 (Pa. 2009), quoting *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006).

Again, appellant was convicted of obstruction of justice pursuant to Section 5010 of the Crimes Code. Section 5101 provides:

**5101. Obstructing administration of law or other governmental function**

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101.

The Pennsylvania supreme court has instructed that to establish a violation of Section 5101, the Commonwealth must prove that (1) the defendant had the intent to obstruct the administration of law; and (2) the defendant used force or violence, breached an official duty, or committed an unlawful act. ***Commonwealth v. Goodman***, 676 A.2d 234, 235 (Pa. 1996) (citations omitted). Section 5010 was substantially based upon the Model Penal Code Section 242.1. ***Commonwealth v. Neckerauer***, 617 A.2d 1281, 1287 (Pa.Super. 1992). As stated in the comment to section 242.1 of the Model Penal Code "[t]his provision is designed to cover a broad range of behavior that impedes or defeats the operation of government." ***Commonwealth v. Johnson***, 100 A.3d 207, 215 (Pa.Super. 2014), citing ***Commonwealth v. Trolene***, 397 A.2d 1200, 1202 (Pa.Super. 1979).

The trial court provides the following analysis in its Rule 1925(a) opinion:

> The evidence in this case was sufficient to convict. The defendant in this case created an opportunity for Hirth and Kelly to flee the residence as Officer Lillie was performing his official duties as a police officer investigating a burglary. She intentionally obstructed and impaired the administration of Officer Lillie's investigation by keeping Officer Lillie at bay while she closed curtains on the windows that would have provided an open view to the escape path taken by Hirth and Kelly. Had the defendant done nothing else, the result of this case may have been different. Instead, the defendant further enabled Hirth and Kelly to flee by leading Officer Lillie to an empty bedroom on the second floor of the residence while she knew that the two burglars were downstairs readying themselves to flee through the garage. The defendant did this despite having been advised that Hirth and Kelly had stolen a loaded firearm and that they were most likely in possession of it when they fled. The gun was never recovered. These actions physically interfered with Officer Lillie's functions and they certainly created an obstacle to his ability to carry out those functions.

Trial court opinion, 7/17/14 at 5.

We disagree with the court's rationale. The officer arrived at appellant's address on a hunch to investigate a reported burglary. Without a warrant, the officer searched the outside of appellant's home before knocking on her door.[1] The officer then knocked on appellant's door and

---

[1] Absent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1 § 8 of the Pennsylvania Constitution. **Commonwealth v. Lopez**, 609 A.2d 177, 178-179 (Pa.Super. 1992). These constitutional protections have been extended to the curtilage of a person's home. **Id.** at n.1. The officer stated he searched the perimeter of the house for any potential items of the burglary and also checked to see if all the doors and windows were closed and secured. (Notes of testimony, 10/7/13 at 12-13.)

asked to search the residence for Hirth and Kelly.[2]  Appellant had no legal duty to open her door or to speak with the officer.  Thus, appellant cannot be said to have impeded a law enforcement officer from administering the law; appellant's son had not even been charged with a crime when the officer knocked on her door.  **See contra Johnson**, 100 A.3d at 214-215 (court upheld a conviction after appellant intentionally delayed opening a locked door after police announced they were serving a warrant so another could avoid apprehension); **Commonwealth v. Snyder**, 60 A.3d 165 (Pa.Super. 2013), **appeal denied**, 70 A.3d 811 (Pa. 2013) (evidence sufficient to support the conviction where appellant went to the home of another and informed that person police were intending to execute a search warrant at the residence).

Appellant was well within her rights when she closed the curtain on her window and such action cannot be said to have obstructed Officer Lillie's duties.  Further, the facts of record do not demonstrate that appellant took the officer to the room on the second floor, which she stated was Kelly's room, as an act of deception.  Rather, appellant appeared to be following the

---

[2] **See Florida v. Jardines**, ___ U.S. ___, 133 S.Ct. 1409 (U.S. 2013) ("A police officer not armed with a warrant may approach a home in hopes of speaking to its occupants, because that is no more than any private citizen might do." (internal quotation marks and citation omitted)); **Commonwealth v. Gibson**, 638 A.2d 203, 207 (Pa. 1994) ("the police have the power to knock on the doors of the citizens of this Commonwealth for investigatory purposes without probable cause").

officer's directive by permitting him to search her son's room. Perhaps appellant was evasive but she did not commit an unlawful act.

We cannot agree that appellant obstructed the officer's effectuation of his duty by closing her living room curtain, seeking her husband's permission to allow the officer in the house, or by taking the officer to her son's room. Appellant cannot be guilty of thwarting the officer from effectuating an arrest, and she bore no affirmative obligation to cooperate with the officer's investigation and desire to speak with her son, who had not yet been charged with a crime. ***See Commonwealth v. Gettemy***, 591 A.2d 320 (Pa.Super. 1991), ***appeal denied***, (Pa. 1992) (where defendant, when questioned by police, denied knowledge of a missing woman and her motor home, but was later found to have made untruthful statements to police, defendant had not obstructed the administration of law by force, violence, physical interference, or obstacle, breach of official duty, or any other unlawful act, and could not be found to have violated 18 Pa.C.S.A. § 5101).

Judgment of sentence reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/2015