J-A25007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                          :        PENNSYLVANIA
                                          :

                   v.                    :

TROY SHAWN HOWARD          :

              Appellant         :    No. 54 WDA 2023

Appeal from the Judgment of Sentence Entered May 2, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001280-2020

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:            **FILED: FEBRUARY 12, 2024**

Troy Shawn Howard appeals from the judgment of sentence of five to ten years of incarceration following his convictions for, *inter alia*, tampering with physical evidence and possession with intent to deliver a controlled substance ("PWID"). We affirm.

In the early morning of March 5, 2020, law enforcement personnel executed a search warrant at 1013 Kenneth Avenue, Apartment B, New Kensington, where, pursuant to a tip from a confidential informant ("CI") and their own surveillance, they knew that Appellant had previously dealt drugs. The search was conducted pursuant to the following pertinent provisions of the Affidavit of Probable Cause:

_____

[*] Retired Senior Judge assigned to the Superior Court.

5. The CI advised that he/she is able to purchase crack cocaine from a male they identified as "Slim" at 1013 Kenneth Avenue Apartment B. The CI described "Slim"as a black male. The CI said that "Slim" utilizes 1013 Kenneth Avenue Apartment B, New Kensington, Westmoreland County, Pennsylvania, 15068. The CI advised that "Slim" will sell the crack cocaine from 1013 Kenneth Avenue Apartment B in the City of New Kensington.

6. The CI has been proven reliable for the Pennsylvania Office of Attorney General and the City of New Kensington Police Department. The information the CI provided regarding this investigation has been corroborated through law enforcement intelligence and physical surveillance. The CI also provided information to law enforcement officers, which were against the CI's own penal interests. In addition, during this investigation, the CI has made two successful controlled purchases of crack cocaine from "Slim."

. . . .

9. The CI was driven near 1013 Kenneth Avenue Apt. B by an undercover officer. The CI was observed walking to a small window on the north side of the building and handing a quantity of money through the window in exchange for a quantity of crack cocaine. Shortly after that, the CI was observed returning to the detail vehicle. The CI handed over a quantity of crack cocaine to the undercover officer. The CI stated that they walked to the side window of 1013 Kenneth Avenue Apt. B and gave "Slim" official [Attorney General Bureau of Narcotics Investigation] funds in exchange for crack cocaine. The crack cocaine was field tested and showed a positive result for cocaine. The CI was kept under constant physical surveillance by detail officers throughout the detail.

. . . .

12. Surveillance had been conducted on this residence in the past. Officers observed numerous people walking to the window on the north side of the residence and making hand to hand transactions with the occupant inside.

Affidavit of Probable Cause, 3/2/20 (cleaned up).

After police knocked and announced their presence, Patrol Sergeant David Coleman saw someone open a window at the back of the residence and discard a small box. When the box hit the ground, a bag and a pair of blue latex gloves fell out. Detective Sergeant Samuel Long observed multiple other small bags inside the box containing what he believed to be crack cocaine and heroin.[1] Upon entering Appellant's residence, officers discovered Appellant seated on a toilet in the bathroom where he had thrown the box of suspected drugs from the window and took him into custody. Law enforcement confirmed that no other individuals were in the residence aside from Appellant. Thereafter, investigators searched the apartment and located large quantities of controlled substances and drug-distribution paraphernalia, such as a digital scale, rubber gloves, and baggies.

Appellant was charged with several crimes and subsequently filed an omnibus pretrial motion challenging the legality of the search of his apartment. Therein, Appellant argued that the search warrant was issued without sufficient probable cause or indication of the CI's reliability and that the evidence seized should therefore be suppressed. *See* Omnibus Pretrial Motion, 12/23/20, at 2-4. Following a hearing and briefing, the trial court denied the motion, and the case proceeded to trial. A jury convicted Appellant of the above offenses and he was sentenced as indicated above. This timely

---

[1] A later test confirmed that the bags contained fentanyl, a Schedule II controlled substance. *See* Trial Court Opinion, 3/6/23, at 7; 35 P.S. § 780-104(2)(ii)(6).

- 3 -

appeal followed. The trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed a statement. Thereafter, the trial court issued a Rule 1925(a) opinion.

Appellant proffers the following questions for our review:

1. A search warrant issued for a residence identified as "1013 Kenneth Avenue, Apartment B, New Kensington." The trial court affirmed the magistrate's finding of probable cause to support the warrant, concluding there was sufficient indicia of reliability surrounding the confidential informant and sufficient facts establishing a nexus of criminal activity to "Apartment B," specifically. So finding, did the trial court rely upon presumptions existing outside the four corners of the affidavit of probable cause and, generally, err by not granting suppression?

2. Was there sufficient evidence to convict Appellant for tampering with evidence, where the subject evidence was discarded in plain view of law enforcement?

3. The Commonwealth's drug-trafficking expert opined that "whoever possessed [the controlled substances] possessed it with the intent to deliver it." Did the Commonwealth adduce sufficient evidence to prove, beyond a reasonable doubt, that it was Appellant's specific intent to deliver the controlled substances rather than a third party's intent?

Appellant's brief at 5.

Appellant's first claim challenges the trial court's denial of his suppression motion, which we consider pursuant to the following legal principles:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those

facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa.Super. 2015) (cleaned up).

Appellant contends that the suppression court erred in upholding the magistrate's ruling that probable cause existed to issue a search warrant for Appellant's residence. *See* Appellant's brief at 24. We observe that the suitability of a "grant of a search warrant to an affiant must be judged solely upon the information before the district justice at the time of its issuance. Consequently, the magistrate's decision must be based on the four corners of the affidavit in support of the issuance of the warrant." *Commonwealth v. Lloyd*, 948 A.3d 875, 880 (Pa.Super. 2008). Our Supreme Court has further held that:

Probable cause is determined by the totality of the circumstances. In determining whether probable cause exists to support a search warrant, the issuing authority is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place. A court reviewing the underlying probable cause determination must view the information offered to establish probable cause in a common-

sense, non-technical manner. Probable cause is based on a probability, not a *prima facie* case of criminal activity.

***Commonwealth v. Green***, 265 A.3d 541, 551 (Pa. 2021) (cleaned up).

The High Court has made it clear that "a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant." ***Commonwealth v. Jones***, 988 A.2d 649, 655 (Pa. 2010) (cleaned up). We have noted that probable cause exists based upon an informant's tip "where police **independently** corroborate the tip, or where the informant has provided **accurate information of criminal activity** in the past, **or** where the informant himself participated in the criminal activity." ***Commonwealth v. Manuel***, 194 A.3d 1076, 1083 (Pa.Super. 2018) (*en banc*) (emphases in original).

Appellant argues that the trial court erred in denying Appellant's motion to suppress. ***See*** Appellant's brief at 23. He maintains that "there was not a sufficient nexus between 1013 Kenneth Avenue, Apartment B, and the observed conduct supporting the warrant application." ***Id***. at 34. In so claiming, he contends that the trial court considered evidence outside the affidavit concerning the identification of the premises. ***Id.*** at 33-34.

However, the trial court found that there was a sufficient nexus, which is supported by the certified record. The trial court stated that law enforcement had set up multiple controlled buys with the CI, who knew the

address where he could purchase drugs. *See* Opinion and Order, 10/12/21, at 2. Moreover, police had undertaken surveillance of the residence and observed conduct similar to when the CI bought drugs. *Id*. at 3. The police also knew that the apartment window where the transactions occurred was Appellant's window. *Id*. at 3. Hence, the CI's pronouncement that crack cocaine could be purchased at Appellant's address was consistent with surveillance undertaken by officers. *See id*. Therefore, the trial court concluded that Appellant's contentions are inapt, as the affiant provided appropriate information concerning the location of the premises, and law enforcement also observed drug dealing at the residence in question similar to that described by the CI and undertaken during the controlled buys. *Id*. at 10-11. The trial court's findings are supported by the affidavit, which detailed the controlled buys carried out by the CI. *See* Affidavit of Probable Cause, *supra* at ¶ 6, 9. Furthermore, the affidavit confirmed the trial court's findings on the surveillance conducted by law enforcement. *Id.* at ¶ 9, 12. Thus, a sufficient nexus existed for the trial court to determine that the magisterial district judge did not erroneously issue a search warrant for 1013 Kenneth Avenue, Apartment B. In so doing, the trial court did not consider material outside the affidavit, as its conclusions were based on material averred by the affiant.

Appellant further suggests that the CI in the case *sub judice* was not shown to be reliable. *See* Appellant's brief at 25. Specifically, Appellant

argues that the affidavit contained no concrete information detailing the dependability of the CI and that the affiant only made "bald assertions concerning the reliability of the CI" and did not elaborate upon details of the CI's track record of providing information that led to arrests. *Id*.

The trial court, however, determined that the CI reliably executed controlled buys, as police officers observed the CI hand money through a window of the residence in question and return with crack cocaine and without the marked funds that law enforcement gave him for the purchase. ***See*** Opinion and Order, 10/12/21, at 2-3. Moreover, this Court has held that detailed descriptions concerning past arrests for which the CI was responsible are not required and, as such, Appellant's argument is not persuasive. ***See*** ***Commonwealth v. Dukeman***, 917 A.2d 338, 341–42 (Pa.Super. 2007) (stating that "the affidavit need not contain the names, dates, or other information concerning prior arrests or convictions" (cleaned up)). Rather, the affidavit appropriately noted that the CI previously provided law enforcement with information that resulted in arrests. ***See id***. (holding that "[t]he affidavit must, however, at the very least, contain an averment stating the customary phrase that the informant has provided information which has in the past resulted in arrests or convictions" (cleaned up)). Instantly, the affidavit contained a similar phrase. ***See*** Affidavit of Probable Cause*, **supra***, at ¶ 6.

Based on the above, the magistrate had a substantial basis for his decision to issue the search warrant, and the trial court did not err in upholding that decision. *See Commonwealth v. Lyons*, 79 A.3d 1053, 1064 (Pa. 2021) (explaining that "[i]n reviewing an issuing authority's decision to issue a warrant, a suppression court must affirm unless the issuing authority had no substantial basis for its decision"). Accordingly, for the foregoing reasons, the suppression court did not err in denying Appellant's suppression motion.

Appellant's second and third issues concern the sufficiency of the evidence for his convictions for tampering with evidence and PWID, respectively. We review a challenge to the sufficiency of the evidence under the following guidelines:

> [When] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567 (Pa.Super. 2017) (citation omitted).

- 9 -

Tampering with physical evidence is defined at § 4910 of the Crimes Code, in pertinent part, as follows: "A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he: (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation[.]" 18 Pa.C.S. § 4910(1). We have held that the Commonwealth must prove three elements to establish the offense of tampering with evidence:

> (1) the defendant knew that an official proceeding or investigation was pending (or about to be instituted); (2) the defendant altered, destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation.

*Commonwealth v. Toomer*, 159 A.3d 956, 961 (Pa.Super. 2017).

Appellant argues that he is entitled to relief because the Commonwealth presented insufficient evidence to convict him of this offense since he took no action to destroy the evidence in question. *See* Appellant's brief at 36. He contends that, instead of, *e.g.*, disposing of the drugs down the toilet, the sink, or the shower to destroy them, he discarded the drugs out of a window in plain view of law enforcement. *Id*. Hence, Appellant avers that because he did not attempt to destroy the evidence or impair its availability to the police, he cannot be convicted of tampering with evidence. *See* Appellant's brief at 36.

In so suggesting, Appellant asserts that the case at bar is analogous to *Commonwealth v. Delgado*, 679 A.2d 223 (Pa. 1996). There, the defendant

fled police after making a controlled buy of narcotics and, in the process of fleeing, discarded the drugs in plain view of pursuing police. *Id*. at 224. Our Supreme Court held that Delgado did not have the necessary intent to sustain his conviction of tampering with evidence, as he did not attempt to destroy or conceal evidence. *Id*. at 225. Instead, the High Court opined that Delgado merely abandoned the drugs in full view of law enforcement. *Id.*

We are, however, not convinced by Appellant's contentions. Our Supreme Court ruled that Delgado could not be found guilty because he abandoned the drugs in plain view of a pursuing officer whom Delgado knew was behind him. *Id*. However, in the instant case, Detective Sergeant Long and other law enforcement personnel were not pursuing Appellant. Rather, they were stationary in the backyard when Appellant lobbed the drugs from the window. Moreover, there was no evidence introduced at trial indicating Appellant's awareness of the police presence in the backyard area where the discarded drugs landed. The officers who announced themselves came through the front door, and the search warrant was executed in the early morning hours when there was little light. Thus, Appellant's reliance upon **Delgado** is inapt.

This Court addressed a similar issue to the case *sub judice* in **Commonwealth v. Govens**, 632 A.2d 1316 (Pa.Super. 1993). There, we affirmed Govens's judgment of sentence for tampering with evidence when law enforcement entered Appellant's residence and found him discarding drugs in the toilet. *Id*. at 1328-1329 (stating that "[t]he trier of fact could

reasonably infer that appellant had become aware that his drug dealing was under investigation when he heard the police knock at his door and announce their presence. Appellant's reaction . . . readily confirms his awareness of a police investigation and his intent to impede the same.").

Although Appellant argues that **Govens** is inapplicable to his case, as he did not attempt to flush the drugs down the toilet, we are unpersuaded. Instantly, the factfinder could infer that Appellant was aware that his illegal activities had become known to the police when they knocked at the door and announced their presence. Thereafter, Appellant threw the drugs from the residence in an attempt to impair the availability of that evidence to law enforcement. While Appellant contends that he did not impede the police investigation or try to make unavailable the evidence, it strains credulity to believe that Appellant discarded the drugs from the bathroom window for any reason other than to keep that evidence from the law enforcement personnel whom he knew were entering the residence.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, Appellant's conviction is supported by sufficient evidence. Appellant, after hearing the police knock and announce their presence, threw a box containing drugs out of a window in an effort to prevent law enforcement from seizing this evidence and using it in their investigation of his illicit activities. Therefore, he is not entitled to relief.

In a similar vein, Appellant contends that the Commonwealth presented insufficient evidence to convict him of PWID. **See** Appellant's brief at 38. To

- 12 -

sustain a conviction for PWID the Commonwealth must prove that Appellant possessed the controlled substance and intended to deliver it. *See* 35 P.S. § 780–113(a)(30). Determining whether a person possessed drugs with an intent to deliver is based upon the totality of circumstances. ***Commonwealth v. Ratsamy***, 934 A.2d 1233 (Pa. 2007). Furthermore, our Supreme Court has opined that "possession with intent to deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances, such as lack of paraphernalia for consumption." *Id*. at 1238 (cleaned up). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drugs, and the behavior of the Appellant." ***Commonwealth v. Kirkland***, 831 A.2d 607, 610 (Pa.Super. 2003).

Appellant asserts that the Commonwealth did not sufficiently prove that he possessed the drugs with the intent to deliver them. *See* Appellant's brief at 39. Specifically, Appellant contends that the "Commonwealth never showed **his** specific intent to possess the drugs **and deliver them**." *Id*. (emphasis in original). However, we are unconvinced by Appellant's arguments.

Concerning Appellant's possession of the drugs, Appellant was the only person law enforcement officials found in the residence, enabling the factfinder to conclude that all recovered drugs belonged to him. While, at trial, Appellant contended that the apartment was leased to another person, there was no indicia that anyone other than Appellant resided in the apartment. Furthermore, police discovered Appellant seated on a toilet in the

bathroom where, moments earlier, officers stationed outside observed a box containing drugs being flung from the window. Hence, the Commonwealth adduced sufficient evidence to allow the jury to conclude beyond a reasonable doubt that Appellant possessed all drugs that were seized.

Regarding Appellant's intent to deliver, expert testimony introduced at trial established that Appellant did not possess the drugs for his personal use. *See Ratsamy*, *supra* at 1237 (stating that "[e]xpert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use."). Detective Anthony Marcocci, an expert in the fields of traffic and sale of drugs, dealer practices, and drug usage, testified that the amount of drugs recovered was too great for Appellant's personal use. *See* N.T. Trial, 2/14/22, at 210, 213. Specifically, the detective observed that the quantities of crack cocaine and fentanyl demonstrated that the drugs were "possessed . . . with the intent to distribute," as a single user "could not ingest" the amounts found at the residence.[2] *Id*. at 211-213. Moreover, Detective Marcocci noted that law enforcement discovered no drug paraphernalia such as needles or syringes in the residence, indicating that the drugs were not for Appellant's personal

---

[2] Appellant possessed fifty-nine grams of crack cocaine, which Detective Marcocci stated was far more than a sole individual could use. *See* N.T. Trial, 2/14/22, at 211. The detective also noted that Appellant had 452 baggies of fentanyl. Coupled with the packaging of the fentanyl, Detective Marcocci testified that the quantity that Appellant possessed demonstrated an intent to deliver. *See id*. at 212-213.

consumption. ***Id***. at 213. Indeed, numerous items found in Appellant's apartment, *i.e.*, a digital scale, baggies, and rubber gloves, suggested that Appellant intended to individually package and sell the drugs, not to ingest them personally. ***See id***. at 212. For the foregoing reasons, Detective Marcocci concluded to a reasonable degree of professional certainty that the drugs Appellant had were not for personal use and were possessed with the intent to deliver. ***See id***.

Accordingly, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the trial court did not err in upholding Appellant's conviction for PWID. Phrased differently, the Commonwealth's evidence was neither so unreliable nor so weak and inconclusive as to make the jury verdict pure conjecture. ***See Commonwealth v. Gause***, 164 A.3d 532, 540 (Pa.Super. 2017) ("Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances").

In sum, none of Appellant's three challenges warrant relief and, as such, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/12/2024